**HYBRITECH INCORPORATED,**
Plaintiff–Appellee,

v.

**ABBOTT LABORATORIES,**
Defendant–Appellant.

No. 87–1467.

United States Court of Appeals,
Federal Circuit.

June 17, 1988.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued for plaintiff-appellee. With him on the brief were Charles E. Lipsey and Thomas H. Jenkins.

C. Lee Cook, Jr., Chadwell, Kayser, Ltd., Chicago, Ill., argued for defendant-appellant. With him on the brief were Richard S. Rhodes, Robert F. Ward and Lynn P.

Hagman. Also on the brief were Jeffrey L. Weinberger and Steven M. Perry, Munger, Tolles & Olson, of Los Angeles, Cal., Mark E. Barmak, Dennis K. Shelton and Edward L. Michael, Abbott Laboratories, North Chicago, Ill.

Before DAVIS[*] and SMITH, Circuit Judges, and BALDWIN, Senior Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

In this patent case, the United States District Court for the Central District of California issued a preliminary injunction order enjoining Abbott Laboratories (Abbott) from manufacturing, using, or selling monoclonal antibody sandwich assays that infringe claims of Hybritech Inc.'s (Hybritech) United States Patent No. 4,376,110 ('110 patent).[1] This injunction was stayed by the district court pending Abbott's appeal to this court. We affirm.

## I. Issue

The sole question on appeal is whether the district court abused its discretion in preliminarily enjoining Abbott from continuing to infringe the '110 patent.

## II. Background

Hybritech, since 1979, has been in the business of developing diagnostic test kits employing monoclonal antibodies that detect various antigens. By detecting specific antigens, a broad range of conditions such as pregnancy, cancer, growth hormone deficiency, or hepatitis can be identified. Hybritech is the assignee of the '110 patent, which patent issued March 8, 1983. The '110 patent relates to "Immunometric Assays Using Monoclonal Antibodies" and sets forth claims defining a variety of sandwich assays using monoclonal antibodies.

The '110 patent has been the subject of prior litigation before this court in *Hybritech Inc. v. Monoclonal Antibodies, Inc.*

---

[*] DAVIS, *Circuit Judge,* participated in the consideration of this case, but because of illness took no part in the decision.

1. *Hybritech Inc. v. Abbott Laboratories,* 4 USPQ2d 1001 (C.D.Cal.1987).

(*MAB*).[2] In that proceeding, Hybritech, alleging that the manufacture and sale of Monoclonal Antibodies, Inc.'s (Monoclonal) diagnostic test kits infringed claims of the '110 patent, on March 2, 1984, brought action in district court against Monoclonal seeking both monetary and injunctive relief.[3] The United States District Court for the Northern District of California concluded that the claimed subject matter of the '110 patent was anticipated under 35 U.S.C. § 102(g). The district court, in that case, also held the claims of the '110 patent invalid for obviousness under 35 U.S.C. § 103. In addition, the district court also invalidated the patent on various grounds based on 35 U.S.C. § 112, first and second paragraphs. On appeal to this court, we reversed in all respects the judgment of the district court holding the claims of the '110 patent invalid.

Subsequent to receiving favorable results on appeal to this court in its litigation with Monoclonal, Hybritech on November 14, 1986, brought a patent infringement action against Abbott seeking both monetary and injunctive relief on grounds that Abbott manufactured and sold diagnostic test kits that infringed claims of the '110 patent. Abbott responded to Hybritech's complaint by filing a counterclaim seeking a declaratory judgment that claims of the '110 patent were invalid and not infringed by Abbott.

With respect to Hybritech's request for a preliminary injunction, the parties conducted limited discovery and submitted memoranda and appendices to the district court. After briefing on the motion was complete but before the district court rendered a decision on the motion, the United States Patent and Trademark Office, on April 8, 1987, declared an interference as to the '110 patent among Hybritech and La Jolla Research Foundation, both junior parties, and Hoffmann–LaRoche, Inc., the senior party. Abbott filed a motion for a stay of the district court action pending the outcome of the interference proceeding; however, this motion was denied by the district court.

On April 23–24, 1987, the district court heard oral argument on the preliminary injunction motion and, at the conclusion of the hearing, the district court rendered an oral ruling, including both oral findings of facts and conclusions of law, that Hybritech's motion for a preliminary injunction should be granted. At this time, the district court expressed its intent to put its oral findings and conclusions into writing. On June 12, 1987, the district court formally entered the injunctive order. In addition to entering the injunction order, the district court granted Abbott's motion to stay the preliminary injunction pending the outcome of this appeal. Abbott, on July 10, 1987, filed its notice of appeal on the injunctive order with this court. On July 14, 1987, the district court entered its written findings of facts and conclusions of law based on its prior oral findings of facts and conclusions of law issued April 24th.

### III. *Analysis*

Our review of a district court's grant of a preliminary injunction pursuant to 35 U.S.C. § 283 is limited to determining whether, in granting the preliminary injunction, the district court abused its discretion, committed an error of law, or seriously misjudged the evidence.[4] Applying this standard of review to the proceeding before us, we cannot conclude, as urged by Abbott, that the district court abused its discretion by granting Hybritech's motion for a preliminary injunction.

■ At the threshold in reaching Abbott's arguments on the merits, we address the procedural issue raised by Abbott whether, for purposes of our review, the district court's oral ruling, issued April 24,

**2.** *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 231 USPQ 81 (Fed.Cir.1986) (*MAB*), *cert. denied,* — U.S. ——, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

**3.** *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 623 F.Supp. 1344, 227 USPQ 215 (N.D.Cal.1985).

**4.** *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.,* 821 F.2d 646, 647, 3 USPQ2d 1316, 1317 (Fed.Cir.1987).

1987, or written findings and conclusions, issued July 14, 1987, provides the basis for this appeal. The resolution of this procedural issue, which issue is not unique to patent law, requires us to turn to the law of the Ninth Circuit, which circuit is the particular regional circuit court where appeals from the district court in this case normally would lie.[5] Ninth Circuit law follows the general rule that a party's filing a notice of appeal to a circuit court divests the district court of jurisdiction over the matters appealed.[6] However, the Ninth Circuit recognizes that this general rule does have exceptions, *e.g.*, where the district court action aids the court of appeals in its review.[7]

Here, the district court made perfectly clear its intent that the oral findings of facts and conclusions of law did not constitute the district court's formal findings and conclusions.[8] Rather, the district court issued oral findings and conclusions for convenience of both the parties and this court.[9] Any changes and additions appearing in the written findings and conclusions were made both for the sake of clarity and to address points that were considered by the district court in reaching its decision but were not articulated at the time the district court delivered its oral opinion. We must conclude that the reduction of the oral ruling into written findings and conclusions aids our review, and, on this basis, that the Ninth Circuit would hold, if faced with the circumstances of this case, that Abbott's filing of its notice of appeal did not divest the district court of jurisdiction to subsequently enter its written findings of facts and conclusions of law.

Abbott, relying on *Chemlawn Services Corp. v. GNC Pumps, Inc.*,[10] contends that, where the district court's written findings of facts and conclusions of law alter, or differ from, its oral findings and conclusions, the district court's oral findings and conclusions must provide the basis for this appeal. We disagree.

*Chemlawn Services* involved a situation wherein the district court failed to issue *any* findings of facts or conclusions of law, either oral or written, with its preliminary injunction as required by Rule 52(a) of the Federal Rules of Civil Procedure. Rather, the district court in that case waited approximately 5 months after its grant from the bench of the preliminary injunction to enter any findings of facts and conclusions of law. On that basis, we held in *Chemlawn Services* that the district court's attempt to cure this error by belatedly entering findings of facts and conclusions of law after the defendant had already filed the notice of appeal was ineffective.[11] In contrast, here, the district court, at the time it issued the injunction, not only made oral findings of facts and conclusions of law, but the district court expressly stated that these oral findings and conclusions would be reduced to writing. Accordingly, we conclude that *Chemlawn Services* simply does not control in this case.

■ We, however, cannot condone, in all cases, the procedure followed by the district court judge in this case. It is our view that a district court should refrain from entering an appealable order until the findings of facts and conclusions of law

---

5. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75, 223 USPQ 465, 471 (Fed.Cir.1984). Although Ninth Circuit law is controlling, we looked to *Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 4 USPQ2d 1772 (Fed.Cir.1987), for guidance in the resolution of this issue.

6. *See Donovan v. Mazzola*, 761 F.2d 1411, 1414 (9th Cir.1985).

7. *See In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981).

8. The district court, in its oral statement of its findings of facts and conclusions of law, stated the following: "I want to be entirely accommodating. Let me also say that I've given you my rulings and I will want to put it in writing. The hurry with which—simply for the court of appeals. The hurry with which that happens will depend to some extent on whether there'll be an appeal."

9. *See Hybritech*, 4 USPQ2d at 1002 n. 1.

10. *Chemlawn Servs. Corp. v. GNC Pumps, Inc.*, 823 F.2d 515, 3 USPQ2d 1313 (Fed.Cir.1987).

11. *Id.* at 517–18, 3 USPQ2d at 1315–16.

*upon which the district court intends the losing party to base any appeal* also are entered. Although under Ninth Circuit law, which controls our resolution of this issue, the district court, in the circumstances of this case, was not precluded from entering its written findings and conclusions after Abbott filed its notice of appeal, we observe that the entry of such an order without the findings and conclusions upon which the district court intended any appellate review be based can lead to wasted effort both by the litigants and by the court. Where a district court wishes to delay entering its findings and conclusions upon which it intends any appeal to be based, the district court may exercise its authority under Rule 58 of the Federal Rules of Civil Procedure to hold up entry of judgment until after the formal findings and conclusions are prepared.

■ Turning to the merits, to obtain a preliminary injunction, pursuant to 35 U.S.C. § 283, a party must establish a right thereto in light of four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest.[12]

These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested.[13] Although the issuance of an injunction is clearly within the discretion of the district court,[14] the district court's discretion is not absolute and must be measured against the standards governing the issuance of an injunction.[15]

## A. Reasonable Likelihood of Success on the Merits

■ The first factor required to be established by a party seeking a preliminary injunction is that it stands to have a reasonable likelihood of success on the merits when the trial court finally adjudicates the dispute. In seeking a preliminary injunction pursuant to section 283, a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent.[16]

### 1. Likelihood of Success: Validity

■ Abbott argues that the district court erred by determining that Hybritech established a likelihood of success on the merits on the issue of the validity of the '110 patent, citing Hybritech's involvement in an interference on the '110 patent wherein Hybritech and the La Jolla Cancer Research Foundation were named as the junior parties and Hoffmann–LaRoche was named as the senior party by virtue of a Swiss patent application. As support for

12. *T.J. Smith & Nephew,* 821 F.2d at 647, 3 USPQ2d at 1317. We note that confusion exists on the issue whether, in view of *Panduit,* Federal Circuit law or regional circuit law provides the standards governing the issuance of an injunction pursuant to § 283. Because the issuance of an injunction pursuant to this section enjoins "the violation of any right secured by a patent, on such terms as the court deems reasonable," a preliminary injunction of this type, although a procedural matter, involves substantive matters unique to patent law and, therefore, is governed by the law of this court. We recognize, however, that purely procedural questions involving the grant of a preliminary injunction are controlled by the law of the appropriate regional circuit. *See, e.g., Chemlawn Servs.,* 823 F.2d at 517, 3 USPQ2d at 1315 (holding that appropriate regional circuit law controls the issue whether the district court, in granting a preliminary injunction, complied with Rule 52(a) of the Federal Rules of Civil Procedure); *Digital Equip. Corp. v. Emulex Corp.,* 805 F.2d 380, 382 & n. 3, 231 USPQ 779, 781 & n. 3 (Fed.Cir.1986) (recognizing that this court must look to the law of the appropriate regional circuit in reviewing the issue whether the district court, in granting a preliminary injunction, violated either Rule 52(a) or Rule 65 of the Federal Rules of Civil Procedure).

13. *Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266, 1269 n. 2, 225 USPQ 345, 346 n. 2 (Fed.Cir. 1985).

14. *See Datascope Corp. v. Kontron Inc.,* 786 F.2d 398, 399, 229 USPQ 41, 42 (Fed.Cir.1986).

15. *See Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579, 219 USPQ 686, 691 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

16. *See id.* at 1578, 219 USPQ at 690.

its argument, Abbott further cites one commentator's analysis for the proposition that only 25 percent of the junior parties prevail in an interference proceeding. On this basis, Abbott asserts that the possibility Hybritech would be awarded priority in the interference proceeding was small and contends that the district court erred by determining that Hybritech established a reasonable likelihood of success on the merits on the issue of patent validity. We are not persuaded.

In concluding that Hybritech established a reasonable likelihood of success on the merits concerning the validity of the '110 patent, the district court recognized both that a pending interference proceeding existed wherein Hybritech was named a junior party and that the existence of the interference raised the possibility that Hybritech may have been denied priority by the time this case is finally resolved. However, despite that possibility, the district court concluded that Hybritech was likely to prevail on the issue of validity notwithstanding the existence of the interference proceeding. On the basis of the evidence before it, the district court concluded that Hybritech was likely to establish a January 1979 date of invention, that based on this court's *MAB* opinion, Hybritech's date of invention was before that of the La Jolla Cancer Research Foundation, and that, in view of 35 U.S.C. § 104, it would be difficult for the Swiss inventors named in the Hoffmann–LaRoche application to prove a date of invention in the United States prior to January 1979. We cannot conclude that the district court abused its discretion or seriously misjudged the evidence in finding a probability of success on the merits despite the pending interference.[17]

Abbott argues that the district court's conclusions regarding the validity of the '110 patent were tainted by its decision to afford dispositive weight to this court's resolution of factual issues in *MAB* and, accordingly, that this case must be remanded to the district court with instructions to make independent factual findings on the record before it. Abbott contends that the district court's misunderstanding of the precedential value of the *MAB* opinion deprived Abbott of due process of law. We disagree.

■ It is well-established that *in context of a motion for preliminary injunction* against further infringement of a patent, the patent holder may use a prior adjudication of patent validity involving a different defendant as evidence supporting its burden of proving likelihood of success on the merits.[18] This is not to say that the district court is bound, *as a matter of law*, by the prior adjudication of validity.[19] Rather, the district court as an exercise of its *discretion*, may give considerable weight to a prior adjudication of validity in determining the likelihood of success on the merits on the issue of validity in the preliminary injunction proceeding before it.

Contrary to Abbott's assertions, the district court did not misunderstand the precedential value of this court's opinion in *MAB*. The district court stated that "Abbott was not a party to those proceedings [in *MAB*] and is not bound by that ruling in the way a prior party would be."[20] Rather, the district court, in a clear exercise of discretion, accepted as evidence of validity, which evidence the district court considered "virtually dispositive," this court's opinion in *MAB*. Abbott has given

17. On April 6, 1988, the Patent and Trademark Office Board of Patent Appeals and Interferences issued a decision both denying the inventors named in the Hoffmann–LaRoche application the benefit of their Swiss patent application filing date and appointing the inventors named in the Hybritech application to senior party status. *Engvall v. Gallati,* Interference No. 101,-769 (Bd.Pat.App. & Int. Apr. 6, 1988).

18. *See H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 388–89, 2 USPQ2d 1926, 1928 (Fed.Cir.1987); *Atlas Powder Co. v. Ireco*

*Chems.,* 773 F.2d 1230, 1232, 227 USPQ 289, 291–92 (Fed.Cir.1985); *Smith Int'l,* 718 F.2d at 1579, 219 USPQ at 691.

19. *See, e.g., Blonder-Tongue Laboratories, Inc. v. University of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 169 USPQ 513, 519–20 (1971); *Allen Archery, Inc. v. Browning Mfg. Co.,* 819 F.2d 1087, 1091, 2 USPQ2d 1490, 1492–93 (Fed.Cir.1987).

20. *Hybritech,* 4 USPQ2d at 1005.

us no reason to hold that the district court abused its discretion by relying on the *MAB* opinion as evidence supporting its determination of success on the merits on the issue of patent validity.

Abbott further argues that the district court failed to make any finding with respect to Abbott's allegation that the claims of the '110 patent were invalid, pursuant to section 112, for indefiniteness on grounds that the claims failed to specify a method by which the data needed to calculate affinity is obtained. Abbott asserts that the district court's failure to recognize the force of this issue vitiates its conclusion that Hybritech is likely to be successful in asserting the validity of its patent. This argument is without merit.

This court has repeatedly recognized that compliance with the second paragraph of section 112 is a question of law.[21] On the basis of the record before us, we cannot hold, in view of the requirements of section 112, that the district court erred by concluding that Hybritech demonstrated a reasonable likelihood of success on the issue of validity.

In its written findings of facts and conclusions of law, the district court addressed the issue of enablement and concluded that the specification of the '110 patent was sufficiently enabling to indicate a likelihood of success. In reaching this conclusion, the district court, with respect to the method by which the data needed to calculate affinity is obtained, expressly found that "most everybody used the Scatchard method to determine affinity constants."[22] Although the enablement requirement, pursuant to section 112, first paragraph, is separate and distinct from the definiteness requirement, pursuant to section 112, second paragraph,[23] this finding by the district court supporting its conclusion that the '110 pat-

ent meets the enablement requirement also supports the conclusion that the claims of the '110 patent meet the definiteness requirement, both within the likelihood-of-success analysis. Accordingly, we cannot disturb, pursuant to Abbott's section 112, second paragraph, argument, the district court's grant to Hybritech of the preliminary injunction.

### 2. *Likelihood of Success: Infringement*

Abbott argues that the district court erred, as a matter of law, by determining that Hybritech had demonstrated a reasonable likelihood of success on the issue of infringement. Abbott contends that Hybritech, in its reply brief filed with this court in the *MAB* proceeding, took the position that the assays claimed in the '110 patent were distinguishable over the prior art because the claims of the '110 patent did not read on assays using blends. In view of Hybritech's position taken in *MAB*, Abbott contends that Hybritech now, as a matter of law, cannot argue in this case that the claims of the '110 patent read on assays using blends. We disagree.

This court, in *Jackson Jordan, Inc. v. Plasser American Corp.*,[24] discussed the propriety of a patent holder taking a position concerning the scope of its claims that was inconsistent with a position concerning the scope of its claims taken in a prior patent infringement action against a different defendant. In that case, although this court questioned whether Jackson Jordan actually was asserting "inconsistent" positions in successive law suits, this court went on to conclude that a patent holder was not precluded from taking a position in a subsequent action inconsistent with a position taken in a prior action if the opposing party in the subse-

---

**21.** *See, e.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576, 1 USPQ2d 1081, 1088 (Fed.Cir.1986); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 624, 225 USPQ 634, 641 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

**22.** *Hybritech,* 4 USPQ2d at 1011.

**23.** *See Orthokinetics,* 806 F.2d at 1575–76, 1 USPQ2d at 1087–88; *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1556–58, 220 USPQ 303, 315–17 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

**24.** *Jackson Jordan, Inc. v. Plasser Am. Corp.,* 747 F.2d 1567, 224 USPQ 1 (Fed.Cir.1984).

quent action fails to demonstrate either (1) personal reliance on the decision granted in the prior suit, (2) prejudice to its litigation of the issues in the present suit by reason of the decision in the prior suit, or (3) the patent holder's apparent misuse of the court.[25] We are in complete agreement with, and adopt as our own in this case, this articulation of the doctrine of inconsistent positions.[26]

Although one of Hybritech's arguments advanced in *MAB* apparently is inconsistent with its position taken in this case,[27] the doctrine of inconsistent positions does not preclude Hybritech in this case from asserting that the claims of the '110 patent read on assays using blends. Here, Abbott has failed to demonstrate either personal reliance on the *MAB* decision or prejudice to its litigation of the issues in this case by reason of the decision in *MAB*. Moreover, because this court, in *MAB*, did not rely on, or even discuss, Hybritech's apparent position concerning antibody blends in resolving the obviousness issue in that case, we cannot conceive that Abbott experienced *any* reliance or prejudice by Hybritech's position taken in *MAB*. Finally, Hybritech's apparent position taken in its reply brief in *MAB* cannot be said to be its primary ground for defending the validity of the '110 patent in that case. Rather, Hybritech's position taken in *MAB* concerning antibody blends appears as an alternative argument that was not adopted by this court. There can be no doubt that this is insufficient to trigger the doctrine of inconsistent positions so as to preclude Hybritech from asserting its position taken in this case.[28]

Abbott argues that, even if it has not demonstrated reliance or prejudice on Hybritech's position taken in *MAB, Jackson Jordan* cannot be interpreted as allowing Hybritech to take a position in this case that is inconsistent with its position taken in *MAB*. Abbott contends that the doctrine of inconsistent positions discussed in *Jackson Jordan* is limited by the Supreme Court's holding in *Smith v. Hall*[29] and by this court's decision in *Coleco Industries, Inc. v. United States International Trade Commission*.[30] We disagree because these cases clearly do not apply here.

*Smith v. Hall* stands for the proposition that a patent claim must be construed by the court the same way for purposes of both validity and infringement. In that proceeding, the patent holder, once having *sought* and *obtained* a broad construction of his claim in an action against one accused infringer, was barred, in a subsequent action against a different accused infringer, from arguing a narrow construction of his claim so as to avoid anticipation.[31] *Smith*, in contrast to this case, involved the doctrine of collateral estoppel. Here, Hybritech is not faced with the doctrine of collateral estoppel because, although Hybritech apparently *sought* in *MAB* a narrow construction of its claim, this court, in *MAB*, did not adopt the particular construction of Hybritech's claim set forth in Hybritech's reply brief in that case.

*Coleco Industries* stands for the proposition that a patent holder, having argued a narrow construction for its claims before the Patent and Trademark Office, should be precluded from arguing a broader construction of its claims in a subsequent in-

---

**25.** *Id.* at 1578–80, 224 USPQ at 9–10.

**26.** Abbott argues that this court's discussion in *Jackson Jordan* of the doctrine of inconsistent positions is dicta and is not entitled to precedential weight. We do not reach Abbott's argument in view of our agreement with, and adoption of, the doctrine of inconsistent positions set forth by this court in *Jackson Jordan.*

**27.** We do not address the issue whether Hybritech's position taken in this case actually is inconsistent with Hybritech's position taken in *MAB* since, in either situation, Hybritech would

not be precluded from arguing its position taken in this case.

**28.** *Jackson Jordan*, 747 F.2d at 1580, 224 USPQ at 11 (Davis, J., concurring).

**29.** *Smith v. Hall*, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1937).

**30.** *Coleco Indus., Inc. v. United States Int'l Trade Comm'n*, 573 F.2d 1247, 65 C.C.P.A. 105, 197 USPQ 472 (1978).

**31.** *Smith*, 301 U.S. at 232, 57 S.Ct. at 718.

fringement action.[32] *Coleco Industries,* in contrast to this case, involved the doctrine of prosecution history estoppel. Here, Hybritech is not faced with the doctrine of prosecution history estoppel because Hybritech's apparently inconsistent argument was not made before the Patent and Trademark Office.

With respect to infringement, Abbott further argues that the district court erred in concluding that the '110 patent claims read on Abbott's TESTPACK and HTSH–EIA assays sufficiently to warrant a finding of likelihood of success. Abbott contends that its TESTPACK and HTSH–EIA assays do not employ antibodies with affinities that fall in the range of affinities claimed in the '110 patent. We disagree.

Analysis of literal infringement is a two-step process.[33] First, the district court must determine the scope of the patent claims. Claim interpretation is a legal question and, on appeal, is reviewed for legal correctness.[34] Underlying the district court's legal conclusion on the scope of the claims, however, may be factual determinations that, to be disturbed by us, must be shown to have been clearly erroneous.[35] Second, the district court must determine whether properly interpreted claims encompass the accused structure. The application of the claim to the accused structure is a fact question and, on appeal, is reviewed under the clearly erroneous standard.[36]

Here, the affinity limitation contained in the claims of the '110 patent, both the solid phase and the labeled antibody, requires antibodies with an affinity of "at least about $10^8$ liters/mole." In determining the scope of the claims, in view of this limitation, the district court cited two- to three-fold measurement errors inherent in affinity measurements. On the basis of this factual determination, which determination

we cannot hold is clearly erroneous, the district court interpreted, as a matter of law, the '110 patent claim language as reciting a range of affinities that encompassed affinities possessed by Abbott's assays. We cannot hold that the district court erred as a matter of law when it construed the claim limitation in this manner.

In determining whether the claims of the '110 patent encompassed Abbott's TESTPACK and HTSH–EIA assays, the district court first was required to choose between affinity measurements submitted by Abbott and affinity measurements submitted by Hybritech. For the TESTPACK assay, the district court adopted Hybritech's measurement of the affinity of the solid phase antibody at 4.7 to $4.8 \times 10^7$ liters/mole and adopted Abbott's measurement of the affinity of the labeled antibody at 7.1 to $7.5 \times 10^7$ liters/mole. For the HTSH–EIA assay, the district court adopted Hybritech's measurement of the affinity of the labeled antibody at 1.2 to 4.5 $\times 10^9$ liters/mole, one solid phase antibody at $3.9 \times 10^8$ liters/mole, and the second solid phase antibody at $1.7 \times 10^9$ liters/mole. On the basis of these measurements, and in view of its interpretation of the claim language "at least about $10^8$ liters/mole," the district court determined that Abbott's TESTPACK and HTSH–EIA assays fell within the scope of, and thus infringed, claims of the '110 patent. The two measurements less than $1 \times 10^8$ liters/mole, i.e., $4.8 \times 10^7$ liters/mole and 7.1 to $7.5 \times 10^7$ liters/mole, fall within the two- to three-fold range of measurement error that the district court interpreted the claims of the '110 patent as encompassing. Abbott has given us no grounds to disturb these findings. Accordingly, we must hold that the district court did not err by con-

32. *Coleco Indus.,* 573 F.2d at 1257, 197 USPQ at 480.

33. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1269–70, 229 USPQ 805, 811 (Fed.Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).

34. *See Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 866, 228 USPQ 90, 93 (Fed.Cir.1985).

35. *See Perini Am., Inc. v. Paper Converting Mach. Co.,* 832 F.2d 581, 584, 4 USPQ2d 1621, 1624 (Fed.Cir.1987).

36. *See Loctite,* 781 F.2d at 866, 228 USPQ at 93.

cluding that Hybritech established a reasonable likelihood of success of proving that Abbott literally infringed claims of the '110 patent. Because of this holding on the question of literal infringement, we need not reach Abbott's arguments concerning infringement pursuant to the doctrine of equivalents.

### B. *Irreparable Harm*

The second factor required to be established by a party seeking a preliminary injunction is that it will suffer irreparable harm if the preliminary injunction is not granted. Abbott proffers three arguments to support its assertion that the district court erred in concluding that Hybritech would suffer irreparable harm in the absence of a preliminary injunction. We are not persuaded by any of these arguments.

■ First, Abbott argues that the district court erred by presuming the existence of irreparable harm, which presumption flows from a strong showing of validity and infringement.[37] Abbott contends that, although the district court expressly stated that it would not afford Hybritech the benefit of a presumption of irreparable harm, the district court's analysis of irreparable harm, in reality, is based upon such a presumption.[38] This argument is without merit.

Although it is true that the district court analyzed the importance of exclusive rights and the importance of the patent system to competitive markets and examined the kind of irreparable harm which can occur when patent rights are ignored in such a market, the district court did not conclude *solely* on the basis of these patent rights that Hybritech would be irreparably harmed if the preliminary injunction was not granted. Rather, in reaching its conclusion, the district court listed the following factors upon

which it based its decision: (1) the field of technology covered by the '110 patent was new; (2) there was a substantial amount of competition in this field; (3) Abbott has a very large presence in this field; (4) this is a field where technology changes fairly quickly; (5) there is a lot of research being done in this field; (6) the '110 patent could help Hybritech establish a market position and create business relationships in the market; (7) by the time the litigation is finished, it is entirely possible that the value of the patent will be gone and that technology might well bypass it; (8) the potential injury is unpredictable; and, (9) in the absence of the injunction, other potential infringers will be encouraged to infringe.[39] In view of these specific grounds enumerated by the district court, we cannot hold that the district court presumed irreparable harm; rather, it is clear from the record that the district court considered a wide range of factors as the basis for its determination.

Second, Abbott argues that a review of these findings relied upon by the district court in reaching its determination of irreparable harm demonstrates that there is nothing in these generalized observations concerning the diagnostic assay field which supports a conclusion of irreparable harm to Hybritech, even assuming that they were all supported by the evidence. Rather, Abbott contends that money damages would be a fully adequate remedy in the event that Hybritech ultimately establishes that any of Abbott's accused assays infringes a valid claim of the '110 patent. We are not persuaded.

■ It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make

---

**37.** *See, e.g., H.H. Robertson,* 820 F.2d at 390, 2 USPQ2d at 1929–30; *Roper,* 757 F.2d at 1271–72, 225 USPQ at 348–49; *Smith Int'l,* 718 F.2d at 1581, 219 USPQ at 692–93.

**38.** Abbott, in its brief, predominantly bases its arguments on this issue upon the district court's

oral opinion. However, as previously discussed, the district court's written findings of facts and conclusions of law are controlling and provide the basis for this appeal.

**39.** *Hybritech,* 4 USPQ2d at 1014–15.

the patentee whole.[40] The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. "If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts." [41] We cannot hold that the district court abused its discretion by granting Hybritech's motion for a preliminary injunction, for the period the litigation is pending, notwithstanding the potential availability of compensatory damages, for this period, after the completion of trial on the merits.

Third, Abbott argues that the district court erred, as a matter of law, in entering a preliminary injunction in the face of undisputed evidence of Hybritech's voluntary and prolonged delay in bringing suit against Abbott. We disagree.

■■■■■ The period of delay exercised by a party prior to seeking a preliminary injunction in a case involving intellectual property is but one factor to be considered by a district court in its analysis of irreparable harm.[42] Although a showing of delay may be so significant, in the district court's discretion, as to preclude a determination of irreparable harm,[43] a showing of delay does not preclude, *as a matter of law*, a determination of irreparable harm.[44] A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances.[45]

Here, the district court was not persuaded that Hybritech's delay in seeking a preliminary injunction against Abbott while it litigated with Monoclonal precludes a finding of irreparable harm. The district court concluded that Hybritech established good cause for seeking relief against Monoclonal first, given its particular situation and financial resources. We cannot hold that this determination by the district court was an abuse of its discretion or based on an error of law.

### C. *The Balance of Hardships*

The third factor required to be considered by the district court in its determination whether to award a preliminary injunction is the balance of hardships. The district court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted.[46]

■■■ Abbott argues that the district court erred, as a matter of law, by issuing the preliminary injunction despite determining that Hybritech had not established that the balance of hardships tipped in its favor. On this basis, Abbott contends that the district court's grant of the preliminary injunction should be reversed. We disagree.

Although this court has cited "the balance of hardships tipping in favor of the movant" as one of four factors *to be considered* by a district court in determining whether to issue a preliminary injunction,[47] we never have required, as a prerequisite to awarding preliminary injunctive relief, that the district court expressly find the existence of this factor. Here, the district

---

40. *See H.H. Robertson,* 820 F.2d at 390, 2 USPQ2d at 1930; *Atlas Powder,* 773 F.2d at 1233, 227 USPQ at 292.

41. *Atlas Powder,* 773 F.2d at 1233, 227 USPQ at 292.

42. *See Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1025, 204 USPQ 177, 184 (7th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

43. *See, e.g., Citibank, N.A. v. Citytrust,* 756 F.2d 273, 276, 225 USPQ 708, 711 (2d Cir.1985); *GTE Corp. v. Williams,* 731 F.2d 676, 678–79, 222 USPQ 803, 804–05 (10th Cir.1984).

44. *See Ideal Indus.,* 612 F.2d at 1025, 204 USPQ at 184.

45. *See, e.g., T.J. Smith & Nephew,* 821 F.2d at 647–48, 3 USPQ2d at 1318.

46. *H.H. Robertson,* 820 F.2d at 390, 2 USPQ2d at 1930.

47. *T.J. Smith & Nephew,* 821 F.2d at 647, 3 USPQ2d at 1317; *see Roper,* 757 F.2d at 1269, 225 USPQ at 346.

court considered the balance of hardships between the parties and concluded that "neither party has a clear advantage." [48] We cannot hold that the district court's conclusion on the balance of hardships, after carefully considering the question, provides grounds for us to disturb its grant of preliminary relief.

### D. Impact of the Injunction on the Public Interest

The fourth factor that must be considered by the district court in determining whether to issue a preliminary injunction is the impact of the injunction on the public interest. Typically, in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents,[49] the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief.[50]

Abbott argues that, although the district court recognized the public interest in product availability by specifically excluding Abbott cancer test kits and Abbott hepatitis kits from the preliminary injunction order, the district court erred in failing to find any public interest considerations with respect to the remaining Abbott products. Abbott contends the district court ignored that (1) the diagnostic community relies upon Abbott for millions of dollars worth of assays, (2) switching by the public of vendors of such assays is an expensive and time consuming undertaking, and (3) supply shortages to the public may result because Hybritech allegedly has experienced substantial difficulties in filling orders promptly. On this basis, Abbott argues that the district court's grant of a preliminary injunction should be reversed. We disagree.

Here, the district court found, with respect to most of Abbott's products involved in this proceeding, that the public interest in enforcing valid patents outweighed any other public interest considerations. Ac-

cordingly, with respect to these products, the district court concluded that the public interest was in favor of granting the preliminary injunction. However, with respect to both Abbott's cancer test kits and Abbott's hepatitis test kits, the district court determined that the public interest is served best by the availability of these kits. On this basis, the district court did not enjoin Abbott from producing these products. We cannot hold that the district court's public interest analysis provides a basis for us to disturb its grant to Hybritech of preliminary relief.

### CONCLUSION

In view of the foregoing, we hold that the district court did not abuse its discretion in granting Hybritech preliminary relief. Accordingly, we affirm the preliminary injunctive order of the district court.

AFFIRMED.

---

48. *Hybritech,* 4 USPQ2d at 1015.

49. *See Smith Int'l,* 718 F.2d at 1581, 219 USPQ at 693.

50. *See Datascope,* 786 F.2d at 401, 229 USPQ at 43.