**LUND INDUSTRIES, INCORPORATED,**
Plaintiff–Appellee,

v.

**GO INDUSTRIES, INC.,**
Defendant–Appellant.

No. 90–1506.

United States Court of Appeals,
Federal Circuit.

July 3, 1991.

Timothy R. Conrad, Merchant, Gould, Smith, Edell, Welter & Schmidt, of Minneapolis, Minn., argued for plaintiff-appellee. With him on the brief were Philip P. Caspers and John D. Gould. Also on the brief was Daniel J. Sheehan, Jr., Sheehan, Young & Culp, P.C., Dallas, Tex., of counsel.

Richard Lloyd Schwartz, Glaser, Griggs & Schwartz, Dallas, Tex., argued for defendant-appellant.

Before LOURIE and RADER, Circuit Judges, and COWEN, Senior Circuit Judge.

RADER, Circuit Judge.

GO Industries, Inc. (GO) appeals from the August 20, 1990 order of the United States District Court for the Northern District of Texas. On motion of Lund Industries, Inc. (Lund), the district court preliminarily enjoined GO from the manufacture, use or sale of certain automobile visors. The court found that GO's accused visors did not colorably differ from visors which GO previously conceded infringed Lund's U.S. Design Patent No. 288,309 ('309 patent). Thus, the trial court concluded that the accused visors also infringed the '309 patent. Because the district court did not

compare the accused visors with the '309 patent claim, this court vacates and remands.

## BACKGROUND

Lund and GO both manufacture automotive accessories, including fiberglass sun visors. These visors attach to an automobile's roof above the windshield to decorate the vehicle and block the sun. Lund's '309 design patent shows and claims a sun visor with a double scoop in the middle and straight lines on its leading edge:

In 1987, Lund sued GO for infringement of the '309 patent and U.S. Design Patent No. 237,705 (the '705 patent). Lund charged that all of GO's sun visors, specifically GO's Square Sun Visor, infringed these patents. GO's Square Sun Visor included the '309 patent's characteristic double scoop. GO ceased manufacturing this double scoop visor in 1987, shortly after the suit began.

During the pendency of the 1987 lawsuit, GO developed a visor known as the GO VISOR. The GO VISOR had the same general shape and appearance as the Square Sun Visor but without the double scoop. The GO VISOR had a single scoop in the middle. Further, the GO VISOR featured straight edges of equal length intersecting in the middle at an angle greater than 160°.

The parties settled the 1987 lawsuit by entering into a Settlement Agreement (June 10, 1988), a License (June 10, 1988), and a Consent Judgment (July 8, 1988). In the settlement agreement, GO conceded the validity of the '309 and '705 patents and admitted that the GO VISOR infringed both patents. The settlement agreements obligated GO to pay royalties to Lund.

In 1989, GO introduced another visor. Although similar to the GO VISOR, this new visor incorporated a smooth arc, rather than straight lines, on its leading edge. On July 15, 1987, GO filed a design patent application on this new design. The application issued on September 5, 1989 as U.S. Design Patent No. 303,239 (the '239 patent). This new visor is the subject of the present suit.

At the time of the settlement negotiations on the 1987 suit, the parties were aware of GO's pending application which ripened into the '239 patent. The settlement papers noted that the application was "directed toward the GO VISOR."

When the '239 patent issued, GO began to market its new visors. Because it sold only these new visors, GO ceased payment of royalties to Lund in October 1989. In March 1990, Lund notified GO that it would terminate the license agreement for failure to pay royalties. GO responded that it owed no royalties. Lund discontinued the license by letter on April 17, 1990.

Lund then sought a preliminary injunction, charging GO's new visors with infringement of the '309 patent. The district court discerned no "colorable" difference between the new visor and the GO VISOR covered by the 1987 settlement agreement. The district court therefore issued a preliminary injunction.

## DISCUSSION

■ The issuance of a preliminary injunction is within the discretion of the trial court. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195–96 (Fed.Cir.1988). However, this discretion is not absolute. *Id.* at 1451, 7 USPQ2d at 1196. To reverse a preliminary injunction on appeal, GO must show that the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence. *Id.* at 1449, 7 USPQ2d at 1194.

■ GO conceded the validity of the '309 patent in the 1988 settlement agreements. Therefore, Lund bore the burden of showing a likelihood of success only on infringement. *See Hybritech*, 849 F.2d at 1451, 7 USPQ2d at 1196 (citing *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578, 219 USPQ 686, 690 (Fed.Cir.) *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983)).

In weighing the likelihood of success on infringement, the trial court relied on *KSM Fastening Sys. v. H.A. Jones Co.*, 776 F.2d 1522, 227 USPQ 676 (Fed.Cir.1985) to justify its comparison of the new visor with the GO VISOR. In *KSM*, an appeal from a contempt proceeding, this court permitted comparison of infringing and accused devices as part of the inquiry into whether contempt proceedings are appropriate in the first instance. This court in *KSM*, however, did not permit comparison of devices to determine whether the injunction had been violated; i.e., whether the patent had been infringed. The court required a "finding that the modified device falls within the admitted or adjudicated scope of the claims...." *Id.* at 1530, 227 USPQ at 682.

■ The trial court erred by applying *KSM* to this case. The *KSM* court permitted a comparison to determine the propriety of proceeding by a contempt action. A preliminary injunction proceeding requires the same infringement analysis as the *KSM* court used to determine violation of the injunction. A proper infringement analysis requires comparison of the accused design to the patent claims, not to another design. *KSM*, 776 F.2d at 1530, 227 USPQ at 682; *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1545, 3 USPQ2d 1412, 1417 (Fed.Cir.1987). Thus, the trial court erred in finding a likelihood of success on infringement based on a comparison of the new 1990 visor with the 1987 single scoop GO VISOR.

■ The trial court assumed without basis that *KSM*'s threshold comparison analysis applies to new infringement actions. This court in *KSM*, however, limited this analysis to the propriety of undertaking a contempt proceeding. *KSM*, 776 F.2d at 1530, 227 USPQ at 682. In deciding whether to conduct contempt proceedings, a trial court must act expeditiously to protect litigants from continuing infringements after adjudication. Further, a trial court may act expeditiously to enforce its orders in the face of conduct ignoring judicial authority.

In this case, Lund filed a new infringement action. An infringement determination calls for careful deliberations. Thus, the trial court had an obligation to perform a careful infringement analysis, not a summary comparison of the 1990 visor with the 1987 GO VISOR. While aware that the

**1276**

claim controls the infringement analysis, the trial court's conclusion reveals a summary comparison procedure. The trial court concluded that the 1990 visor "still falls within the settlement agreement's definition for an infringing visor." This conclusion does not refer to the '309 patent claim.

 The Supreme Court set out the proper test for design patent infringement in *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871):

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. In addition to the overall similarity of designs, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1565, 7 USPQ2d 1548, 1554 (Fed.Cir.1988) (citing *Shelcore, Inc. v. Durham Indus, Inc.,* 745 F.2d 621, 628 n. 16, 223 USPQ 584, 590 n. 17 (Fed.Cir.1984)).

The district court in this case did not employ the ordinary observer test or determine the point of novelty of the visor shown in the '309 patent. Nor did it determine whether the new 1990 visor appropriated the point of novelty of the patented visor. Absent this analysis, the district court's summary conclusion of infringement cannot stand. GO's prior admission of infringement on a different, albeit similar design does not justify departure from a proper infringement analysis. On remand, the trial court must analyze design patent infringement by comparing the accused device to the claim.

### COSTS

Each party shall bear its own costs.

VACATED AND REMANDED.