16 F.3d 421
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 SPEED SHORE CORPORATION, Plaintiff-Appellee,
v.
ALLIED STEEL AND TRACTOR PRODUCTS, INC., Defendant-Appellant.
 No. 93-1396.
 United States Court of Appeals, Federal Circuit.
 Dec. 14, 1993.
 
 Before NIES, Chief Judge, PLAGER and CLEVENGER, Circuit Judges.
 PLAGER, Circuit Judge.
 
 DECISION
 
 1
 Allied Steel and Tractor Products, Inc. (Allied) appeals from the amended Preliminary Injunction Order of the United States District Court for the Southern District of Texas. Speed Shore Corp. v. Allied Steel & Tractor Prods., Inc., Civil No. H-91-3704 (S.D.Tex. July 19, 1993). Because we find that the district court clearly erred in finding that Speed Shore Corporation (Speed Shore) demonstrated a substantial likelihood of success on the merits in the underlying patent infringement claim, we reverse the judgment of the trial court and vacate the order granting the preliminary injunction.[1]
 
 BACKGROUND
 
 2
 On September 28, 1990, Speed Shore's current president, Michael J. Plank, filed a patent application for a "Shoring Shield" which eventually issued as U.S. Patent No. 5,096,334 ('334 patent). The application described and claimed an apparatus which supports the opposing walls of an excavation so as to prevent a collapse. The application disclosed a number of prior patents as well as other non-patented devices such as vertical shores,[2] walers,[3] and skeleton boxes.[4] The claims were initially rejected in light of these references, but based on the applicant's response and amendments to the claims a Notice of Allowability was issued on August 13, 1991. Plank did not, however, disclose a document earlier published by Speed Shore advertising a similar product--this document became known as the U.S. Brochure, and will be discussed further below.
 
 
 3
 A few months later, Speed Shore, which had been assigned the rights to the above-mentioned application, filed a declaratory judgment action against Allied alleging that Allied's "Shield Box" was a copy of Speed Shore's "Shoring Shield". When the '334 patent issued on March 17, 1992, Speed Shore amended its complaint to include a claim of patent infringement; Allied counter-claimed alleging invalidity.
 
 
 4
 On April 28, 1992, Speed Shore filed a Motion for Preliminary Injunction. In December 1992 a preliminary injunction hearing took place before Magistrate Nancy K. Pecht. The hearing was apparently limited to a consideration of Claim 1 of the '334 patent.[5]
 
 
 5
 On January 6, 1993, the Magistrate issued her Findings and Conclusions which recommended that Speed Shore's Motion for Preliminary Injunction be granted. The trial court adopted these findings and conclusions in an order dated May 20, 1993, and issued the preliminary injunction. An amended Order was issued in July 1993 adopting the initial order and correcting certain technical errors. Allied appeals this Order to our court.
 
 DISCUSSION
 
 6
 The patentee carries the burden of showing that he is entitled to a preliminary injunction in light of the following four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) balance of hardships; and (4) public interest. Chrysler Motors Corp. v. Auto Body Panels, 908 F.2d 951, 952, 15 U.S.P.Q.2d 1469, 1470 (Fed.Cir.1990). In order to show a reasonable likelihood of success on the merits, the patentee must establish a reasonable likelihood of success with respect to both validity and infringement of the patent. Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1451, 7 U.S.P.Q.2d 1191, 1196 (Fed.Cir.1988).
 
 
 7
 The question on appeal is whether the existence of the U.S. Brochure sufficiently clouds the validity of the '334 patent so that it cannot be said that Speed Shore has a reasonable likelihood of success. When considering the U.S. Brochure, the trial court found that this reference did not disclose each element of Claim 1 of the '334 patent and that this reference was no more pertinent than references already considered by the examiner during the prosecution of the '334 patent. Therefore the court concluded that Speed Shore had shown that Allied's defense of invalidity was unlikely to succeed at trial.
 
 
 8
 We believe that the trial court seriously misjudged the evidence under its findings of fact. The U.S. Brochure describes a device that arguably meets every limitation or its equivalent of the means plus function claim in the '334 patent. Speed Shore argues that this reference does not anticipate under 35 U.S.C. Sec. 102 because it lacks a "shield means" and a "manifold and valve means" as claimed in 1(a) and (e) of the '334 patent. The U.S. Brochure, however, specifically advertises a "skeleton box" with "a special hydraulic manifold ... for complete control of all cylinders from a single point" and "optional solid-sheeted panels for unstable soil conditions." Furthermore, although such features may have existed in the prior art, there is no single piece of prior art which teaches these features in combination, and therefore the U.S. Brochure is more pertinent than prior art considered during prosecution of the '334 patent. For these reasons, we believe that the U.S. Brochure, on its face, raises a substantial question of validity both in terms of anticipation[6] and obviousness.[7] Therefore, the judgment of the United States District Court for the Southern District of Texas is reversed, and the amended Preliminary Injunction Order is vacated.
 
 
 
 [1]
 In light of this decision, Allied's December 3, 1993 motion for reconsideration of the denial, issued earlier by a panel of this court, to stay the preliminary injunction, is rendered moot
 
 
 [2]
 A vertical shore consists of two vertical shoring rails connected by one or more horizontally disposed hydraulic cylinders
 
 
 [3]
 A waler system consists of horizontally disposed hydraulic cylinders connected at their opposite ends to horizontal rails which abut against timbers or sheeting previously placed against the opposing walls of the excavation
 
 
 [4]
 A skeleton box combines the horizontal rails of the waler system, which are connected by horizontally disposed hydraulic cylinders, with vertical shore rails
 
 
 [5]
 Claim 1 of the '334 patent reads:
 
 
 [1]
 A device for shoring the walls of an excavation comprising:
 (a) spaced shield means for insertion into the excavation for support of opposing side walls of the open excavation;
 (b) support means mounted upon each of said shield means;
 (c) telescoping cross members mounted to said support means of each of said walls and extending across the space to form a box like structure expandable in one direction across the width of the excavation;
 (d) means for extending and contracting said cross members across the width of the excavation; and,
 (e) means for selectively applying, monitoring, adjusting and releasing a precise pressure to said open excavation walls said means comprising combination manifold means and valve means providing for at least one attachment point for a hydraulic pressure source.
 
 
 [6]
 Speed Shore does not disagree with Allied's contention that the disclosed invention was offered for sale and disclosed in a publication more than one year before the filing of the '334 patent, and therefore, if every element of claim 1 is found in this prior art, the U.S. Brochure or the device offered for sale as advertised in the U.S. Brochure or both invalidate the '334 under 35 U.S.C. Sec. 102(b)
 
 
 [7]
 The court notes further that on July 21, 1993 the Patent and Trademark Office (PTO) ordered reexamination as to all 11 claims of the '334 patent in light of the U.S. Brochure reference