78 F.3d 605
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
The READ CORPORATION and F.T. Read & Sons, Inc., Plaintiffs-Appellees.
v.
VIPER INTERNATIONAL LTD., and Viper (GB) Ltd., Defendants,
and
Viper N.A. and Steven C. Farnham, Defendants-Appellants.
 No. 95-1318.
 United States Court of Appeals, Federal Circuit.
 Feb. 23, 1996.
 
 Before RADER, Circuit Judge, SMITH, Senior Circuit Judge and BRYSON, Circuit Judge.
 Decision
 SMITH, Senior Circuit Judge.
 
 
 1
 Viper N.A., Inc. and Steven C. Farnham ("Viper") appeal the trial court's[1] granting a preliminary injunction finding that Read Corporation and F.T. Read & Sons, Inc. ("Read") demonstrated a reasonable likelihood of success on the merits in proving Viper's screener infringes Read's Screen-All, U.S. Patent No. 4,256,572 ("the Read '572 patent"). We affirm.
 
 Facts
 
 2
 Read manufactures a screening device used to separate fine earth material from larger debris. The Read Screen-All device consists of a large box-like structure with horizontal screens inside. A payloader dumps material into the top of the unit and onto the screens which are shaken to separate small materials from larger materials. Read brought this infringement action against Viper which markets the Viper III screener. The trial court granted Read's motion for a preliminary injunction that enjoins Viper from making, using, marketing or otherwise placing in commerce the Viper III screener.
 
 Standard of Review
 
 3
 Whether to grant a preliminary injunction is within the trial court's discretion, and reversal requires showing the trial court abused its discretion, committed an error of law, or seriously misjudged the evidence. 35 U.S.C. § 283; Oakley, Inc. v. International Tropic-Cal, Inc., 923 F.2d 167, 168 (Fed.Cir.1991) (citing Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1449 (Fed.Cir.1988)).
 
 Preliminary Injunction
 
 4
 The movant must establish a right to a preliminary injunction in light of four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) balance of the hardships; and (4) harm to the public interest. Hybritech, 849 F.2d at 1451. No particular factor is dispositive; rather, the court must weigh and measure each factor against the others and against the relief requested. Id. The movant has the burden of proving it is entitled to the preliminary injunction. Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed.Cir.1994). However, the evidence proffered in connection with the preliminary motion must be considered in the context of the presumptions and burdens that would inhere at trial. H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 387-88 (Fed.Cir.1987).
 
 
 5
 Reasonable Likelihood of Success on the Merits
 
 
 6
 In proving a reasonable likelihood of success on the merits, the movant must establish both validity of the patent and infringement. Hybritech at 1451. The party attacking the patent's validity has the burden of proving invalidity at trial, and the evidence must be viewed in this light. H.H. Robertson, 820 F.2d at 387. Determining infringement involves a two-step process where first the claim language is interpreted as a matter of law, and second, the accused device is compared to the interpreted claim to determine infringement as a question of fact. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976, 979 (Fed.Cir.1995); Read v. Portec, 970 F.2d 816, 821-22 (Fed.Cir.1992) (hereinafter Portec II ). There is literal infringement where the accused device contains all of the limitations specified in a patent claim. Portec II, 970 F.2d at 821. However, "[w]hen literal infringement is not established, infringement may be proved under the doctrine of equivalents when there is not a substantial difference between the claimed invention and the accused product." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1218 (Fed.Cir.1995). Under the doctrine of equivalents, infringement may be found where an accused product "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 677, 683 (Fed.Cir.1990), cert. denied, 498 U.S. 992 (1990) (internal quotations omitted); see also, Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc., 62 F.3d 1512, 1518 (Fed.Cir.1995) (the function-way-result test is one means of finding equivalency, although other evidence may also be relevant to show the substantiality of the differences). Therefore, infringement is a question of fact that requires each claim limitation be met either literally or by a substantial equivalent. Hilton Davis, 62 F.3d at 1520; Portec II at 822.
 
 
 7
 In this case, Read relies on a prior adjudication of its U.S. Patent No. 4,197,194 ("the Read '194 patent"), which is the parent patent of the Read '572 patent. Read Corp. v. Portec, Inc., 748 F.Supp. 1078 (D.Del.1990), aff'd in part, rev'd in part, 970 F.2d 816 (Fed.Cir.1992) (hereinafter Portec I ). The Read '194 patent has movable wheels mounted on the back of the unit. To transport the unit, the wheels are lowered until they lift the unit, and the other end is raised by a lift-jack and hitched to the towing vehicle. To operate the unit, the wheels are put in an inoperative position by raising the wheels until the unit rests flush on the ground and the weight is off the wheels. The Portec screening device has fixed wheels on one side of the unit and a footpad[2] on the opposite side. To operate the Portec unit, hydraulic cylinders lower the footpad to raise the unit off the ground so that it rests on the footpad and fixed wheels. To transport the Portec unit, the footpad is raised so that the unit rests on a trailer hitch and the fixed wheels. In Portec II, this court upheld the jury's finding of infringement because there was substantial evidence that Portec's footpad/fixed wheel configuration was equivalent to Read's movable wheels, stating
 
 
 8
 Read's movable wheels allow for the heavy weight of the loaded machine to be taken off the wheels and provide for stability of the machine during screening operations by placing the frame "flush to the ground." ... When extended, [Portec's] footpad becomes an extension of the frame "flush on the ground" which removes weight from the wheels.
 
 
 9
 Portec II at 823-24.
 
 
 10
 "A prior adjudication upholding patent validity after a fully litigated trial, including similar issues of fact and law, contributes strong support to the grant of a preliminary injunction." H.H. Robertson at 388; see also, Hybritech at 1452. The Portec case is strong evidence that the trier of fact in this case will find the Viper III infringes Read's '572 patent. The Read '572 patent is identical to the Read '194 patent at issue in Portec II, except the Read '572 has a hopper and conveyor system to remove screened material from inside the box. Viper admits that the Viper III literally has all the limitations of the Read '572 patent except for the movable wheels limitation at issue in Portec II. Further, the Viper III is the same system as the Portec unit, except the Viper III uses two legs instead of the footpad used by Portec.
 
 
 11
 Viper argues that Read's concessions made in Portec I to distinguish prior art precludes finding infringement in this case. Specifically, Viper points to U.S. Patent No. 3,307,698 ("the Haffner patent") which has fixed wheels on one end and two lift jacks on the other. To counter Portec's claim that its footpad was the same as the Haffner lift jacks. Read distinguished the Portec footpad by arguing the footpad "constituted extensions of the frame and not merely a form of lift 'jacks'." Portec I at 1096. Viper argues that the Viper III legs are the same as the Haffner lift jacks and not the Portec footpad which formed an extension of the frame. However, we agree with the trial court that the Viper III legs are more substantial, sturdier devices than the Haffner lift jacks and, like the Portec footpad, are more like "extensions of the frame." Therefore, it is reasonably likely that the Viper III corner legs/fixed wheel configuration will be found to infringe the Read '572 movable wheels configuration where, under the Portec II rationale, "[i]nasmuch as all but one of the limitations of the asserted claims is met literally, and that one is met equivalently, the accused structures satisfy the 'same way' requirement," and there is no genuine dispute that the Viper III "perform[s] the same overall work to achieve the same overall result." Portec II at 825.
 
 Other Factors
 
 12
 Irreparable harm may be presumed from Read's establishing a reasonable likelihood of success on the merits. H.H. Robertson at 390. Indeed, "a strong showing of likelihood of success on the merits coupled with continuing infringement raises a [rebuttable] presumption of irreparable harm [that] shifts the ultimate burden of production on the question of irreparable harm onto the alleged infringer." Reebok, 32 F.3d at 1556. In light of this presumption, the trial court considered evidence such as Viper's intent to continue selling the Viper III unit, the limited number of years remaining on Read's patent, and Read's delay in prosecuting this action. The trial court also found the balance of hardships favor Read, considering evidence such as Viper's obtaining information necessary to practice Read's invention, and Viper's selling screeners in Europe that infringe Read's patents. Based on this evidence, the court found that granting the injunction merely requires Viper to pay the consequences of its calculated risk that it might infringe Read's patents. The court found the public interest in protecting valid patents outweighed any other injury to the public interest that may arise from removing the Viper III unit from the market.
 
 
 13
 Upon reviewing the trial courts ruling, we find that it did not abuse its discretion and affirm its granting a preliminary injunction.
 
 
 
 [1]
 United States District Court for the District of Massachusetts
 
 
 [2]
 Portec offered two configurations. One configuration uses two footpads, one on either side of the unit. The other configuration uses one footpad on the opposite end from the fixed wheels. Ultimately, both versions were found to infringe the Read '194 patent. At interest in this case is the single footpad configuration which is most similar to the Viper III unit