BLACK AND DECKER, INC. and Black and Decker (U.S.), Inc. and CIC Int'l Corp.

v.

HOOVER SERVICE CENTER and The Hoover Company.

Civ. No. H–87–851(WWE).

United States District Court, D. Connecticut.

April 3, 1991.

---

Deborah J. Blood, Day, Berry & Howard, Hartford, Conn., Don Harness, Gordon Harris (pro hac vice), Herness, Dickey & Pierce, Troy, Mich., Barry Deutsch, Sr. Group Patent Counsel, Black and Decker U.S. Inc., Shelton, Conn., John D. DelPonti, General Patent Counsel, Black and Decker Corp., Towson, Md., for plaintiffs.

Ben A. Solnit, Robert K. Ciulla, Ronald J. Cohen, Tyler, Cooper & Alcorn, New Haven, Conn., Ray L. Weber (pro hac vice), Renner, Kenner, Greive, Bobak Taylor, Akron, Ohio, Ralph J. Savarese, Charles J. Engel, Margaret M. Zwisler, Howrey & Simon, Washington, D.C., Ronald K. Bennington, Black, McCuskey, Souers and Arbaugh, Canton, Ohio, for defendants.

### RULING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

EGINTON, District Judge.

BACKGROUND

Plaintiffs, Black and Decker, Inc., Black and Decker (U.S.), Inc. and CIC Int'l Corp. (collectively "Black and Decker"), commenced this action against defendants, the Hoover Service Center and The Hoover Company (collectively "Hoover"), alleging that the sales of Hoover's DUBL–DUTY hand-held vacuum product constituted infringement of U.S. Patent No. 4,309,875 ("875 patent"), infringement and dilution of trademark rights arising from the appearance of the bowl portion of Black and Decker's DUSTBUSTER hand-held vacuum product, and unfair competition.

On November 2, 1987, Black and Decker moved to enjoin sales of the DUBL–DUTY on the basis of all the allegations of the

complaint with the exception of the patent infringement claims. Prior to a preliminary injunction hearing, Black and Decker amended the complaint, adding an allegation of infringement of U.S. Patent No. 4,542,557 ("557 patent") for the rights to which Black and Decker had become an exclusive licensee, and adding as plaintiff its licensor, CIC Int'l Corp. Based on the amended complaint, Black and Decker moved to enjoin infringement of the 557 patent.

In April and July, 1988, this Court conducted a seven day evidentiary hearing on the issues raised by Black and Decker's motion for a preliminary injunction. The motion was then denied by a ruling dated January 27, 1989. On September 28, 1989, the United States Court of Appeals for the Federal Circuit vacated this Court's opinion and remanded for further consideration in light of its appellate opinion. *Black and Decker, Inc. v. Hoover Serv. Center*, 886 F.2d 1285 (Fed.Cir.1989). The Federal Circuit held that this Court's determination that the trade dress of the DUSTBUSTER bowl was functional was based on erroneous reliance on the 875 patent and that, in any event, the Court's holding on this point was clearly erroneous. In addition, the Federal Circuit found that this Court's holding that Black and Decker had not shown a likelihood of success on its claim of infringement of the 557 patent under the doctrine of equivalents was also clearly erroneous.

On October 9, 1989, plaintiffs filed a renewed motion for a preliminary injunction, seeking to prevent defendants from infringing United States Reissue Patent No. Re. 33,074 ("074 reissue patent" or "the Levine patent") which is a reissue of the 557 patent. At the same time, plaintiffs withdrew their request for preliminary relief on the trade dress issue. In accordance with the instructions of the Federal Circuit, this Court conducted eleven additional days of evidentiary hearing on plaintiffs' renewed motion for a preliminary injunction. The Court heard evidence regarding the issue of validity of the 074 reissue patent, irreparable harm, balance of hardships, public interest, as well as defendants' affirmative defenses and counterclaims for antitrust violations. The parties have submitted post-hearing briefs which this Court has carefully reviewed. For the reasons set forth below, plaintiffs' motion for a preliminary injunction will be denied.

DISCUSSION

Initially the Court notes that it is bound by the finding of the Federal Circuit that Black and Decker has shown a likelihood of success on the merits of its claim of infringement under the doctrine of equivalents. *Black and Decker, Inc. v. Hoover Service Center*, 886 F.2d at 1296. Despite the fact that the patent has been reissued since the filing of the Federal Circuit opinion, the reissue claims presently asserted for purposes of Black and Decker's motion for a preliminary injunction are unchanged from the original patent and thus the finding of the Federal Circuit on the issue of infringement remains binding on this Court.

■ As a preliminary matter, Black and Decker urges this Court to disregard all evidence regarding Hoover's claims of trademark misuse or bad faith trademark prosecution. However, "the use of a patent as part of an overall scheme to violate the antitrust laws" constitutes patent misuse barring enforcement of the patent. *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1577–78 (Fed.Cir. 1990). Thus, the Court finds that evidence regarding trademark misuse and bad faith trademark prosecution is relevant and properly considered insofar as it is offered to show an overall scheme to violate the antitrust laws. The Court will not, however, consider this evidence as a separate ground for a denial of Black and Decker's motion for a preliminary injunction since a finding that trademark misuse or bad faith trademark prosecution has occurred, standing alone, would not render the patent at issue unenforceable.

■ Black and Decker also seeks to preclude consideration of Hoover's Clayton Act claims on the ground that such claims were first asserted after the conclusion of

the preliminary injunction hearings. The Court agrees that Hoover should have asserted these claims earlier. However, the Court finds that Black and Decker will not be prejudiced by consideration of these claims, especially given the substantial overlap of evidence between the Clayton Act claims and the Section 2 Sherman Act claims.

In addition to the issues of the validity and enforceability of the 074 reissue patent, this ruling will address the issues of irreparable harm, balance of hardships and the public interest surrounding the grant or denial of injunctive relief.

### I. Validity of the 074 Reissue Patent

In response to Black and Decker's claims of infringement, Hoover has asserted that the 074 reissue patent is invalid and unenforceable for several reasons. First, Hoover argues that claim 1 of the reissue patent is anticipated by the Meyerhoefer Patent 3,267,511 and is thus invalid pursuant to 35 U.S.C. § 102. Alternatively Hoover argues that, even if not anticipated, claim 1 is obvious in light of Meyerhoefer and thus invalid pursuant to 35 U.S.C. § 103. Second, Hoover claims that the ambiguities and inconsistencies contained in claim 1 of the 074 reissue render the patent invalid pursuant to 35 U.S.C. § 112. Finally, Hoover argues that the 074 reissue patent is rendered unenforceable by the inequitable conduct of Black and Decker in prosecuting the reissue application before the Patent and Trademark Office.

■ At trial, the burden of proof of patent invalidity rests on the party asserting the defense. Hoover's claim of anticipation under 35 U.S.C. § 102(b) will ultimately require Hoover to come forth with clear and convincing evidence overcoming the presumption of patent validity, 35 U.S.C. § 282, and demonstrating that all of the claim limitations are met by a prior art reference. *Trans–World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552 (Fed. Cir.1984). However, while the ultimate burden of proof on the affirmative defenses of invalidity and unenforceability will fall on Hoover at trial, at this preliminary injunction stage Black and Decker must show a "reasonable likelihood" that Hoover's attacks on the patent in issue will fail. *H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 387 (Fed.Cir.1987); *see also Drexelbrook Controls, Inc. v. Magnetrol Int'l, Inc.,* 720 F.Supp. 397, 400 (D.Del. 1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990). Considering Black and Decker's burden on its motion for a preliminary injunction in the context of the presumptions and burdens to be met by Hoover at a trial on the merits, the Court will consider each of Hoover's defenses in turn.

### A. *Invalidity Under 35 U.S.C. § 102*

■ An invention protected by a patent is measured by the patent claims. *Environmental Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693 (Fed.Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). These claims must identify that which the patentee regards as his invention. 35 U.S.C. § 102. An invention may not be patented if the claimed subject matter of the invention was "patented or described in a printed publication ... or in public use or on sale ... more than one year prior to the date of the application for patent ..." 35 U.S.C. § 102(b). *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367 (Fed.Cir. 1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

In response to Hoover's assertion of the Meyerhoefer patent as an anticipating reference, Black and Decker argues that Meyerhoefer does not anticipate claim 1 of the reissue patent because, unlike claim 1, Meyerhoefer does not disclose a hand held portable vacuum cleaner, the Meyerhoefer device employs a float valve to shut off the device when it is full, and the Meyerhoefer device is not operative in a variety of orientations. Based on the evidence, however, the Court concludes that, like the Meyerhoefer device, claim 1 of the reissue patent is directed toward a vacuum cleaner generally and is not limited to a hand held portable vacuum cleaner, is not dependent upon the presence or absence of a float valve, and defines the claimed device in a single

orientation, a horizontal one. The differences between the teachings of Meyerhoefer and the disclosure of the reissue patent are not recited in claim 1 of the patent.

■ Black and Decker urges this Court to find that since the specification of the reissue patent presents a hand held portable vacuum cleaner that does not have a float valve and which can be used in a variety of orientations, claim 1 of the reissue patent should be construed as incorporating those limitations. As Professor Donald S. Chisum [1], testified, however, one can only read claim 1 of the reissue patent to distinguish over Meyerhoefer by reading extraneous limitations into claim 1 which are not present in the claim and which can only be found from the patent specification. The Federal Circuit has consistently noted that "courts cannot alter what the patentee has chosen to claim as his invention ... limitations appearing in the specification will not be read into claims, and ... interpreting what is *meant* by a word *in* a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.'" *Intervet America, Inc. v. Kee–Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989). (Emphasis in original). Thus, although claims are to be interpreted in light of the specification and with a view to ascertain the invention, it does not follow that limitations from the specification may be read into the claims. *Sjolund v. Musland*, 847 F.2d 1573 (Fed. Cir.1988).

■ In addition, it is clear that claims other than claim 1 are directed to a hand-held portable vacuum cleaner capable of being used, transported and stored in a variety of orientations *see, e.g.*, claims 11–13, but claim 1 has no such limitations. A court may not introduce into a claim by interpretation, limitations that are explicitly contained in other claims. *Caterpillar Tractor Co. v. Berco, S.p.A.*, 714 F.2d 1110 (Fed.Cir.1983). Indeed, there is "presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed.Cir.1987). Since the restrictions Black and Decker seeks to add to claim 1 of the reissue patent are already contained in other claims of the patent, they cannot be read into claim 1 to avoid a finding of invalidity. *See Kalman v. Kimberly–Clark Corp.*, 713 F.2d 760, 771 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984), *over'ld in part on other grounds*, 775 F.2d 1107, 1125 (1985).

■ In further *opposition to Hoover's claim of anticipation based on Meyerhoefer*, Black and Decker asserts that Meyerhoefer was presented to the patent examiner during the prosecution of the reissue application and that therefore the reissue patent is entitled to a presumption of validity. Initially, the Court notes that the presumption of validity is rebuttable. *See Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed.Cir.1985). And although a patent examiner may have considered a prior art reference during the prosecution of a patent, the claims of the patent may be held invalid if that prior art is shown to anticipate the claims. *Tyler Refrigeration v. Kysor Industrial Corp.*, 777 F.2d 687, 690 (Fed.Cir.1985). Further, if the examiner did not consider the prior art at all, then the presumption of validity is more easily overcome than in a case where the prior art has been fully considered. *Id.* In this case, the evidence presented at the hearing demonstrated that Meyerhoefer was not disclosed to the Patent Office until after claim 1 had been granted in the reissue proceedings and thus it appears quite likely that the examiner did not consider the application of Meyerhoefer to reissue claim 1. Thus, the deference ordinarily due to the examiners, *see American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), is inap-

---

**1.** Professor Chisum is a Professor of Intellectual Property Law at the University of Washington in Seattle, and is the author of numerous scholarly articles in the area of patent law and has authored the oft cited treatise on the subject entitled, "Patents, a Treatise on The Law of Patentability, Validity and Infringement".

plicable or at the very least limited in this case.

### B. *Invalidity Under 35 U.S.C. § 103*

■ Even if this Court were to construe claim 1 of the reissue patent as limited to a hand-held, portable vacuum cleaner capable of being used or transported in a variety of orientations, the Court concludes that claim 1 would be invalid as obvious in view of Meyerhoefer. The patent law proscribes the patenting of inventions which, in view of the prior art, would have been obvious to those of ordinary skill in that art. 35 U.S.C. § 103. Chris Reed, a Black and Decker engineer and one obviously skilled in the pertinent art, readily recognized the applicability of Meyerhoefer to a hand-held wet/dry vacuum cleaner, the necessary modifications to Meyerhoefer to employ it as such, and testified that he followed the teachings of Meyerhoefer in developing Black and Decker's PowerPro. Indeed, Reed testified that all one had to do to convert Meyerhoefer into the invention described in the Levine patent was to move the motor and blower downwards towards the air separation system. Based on this and the other evidence of record presented at the hearing, and applying the analysis set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Court concludes that claim 1 of the Levine patent would have been obvious to one of ordinary skill in the art in light of Meyerhoefer.

Thus, on the basis of Hoover's likelihood of success on the issue of the anticipation or at the least the obviousness of claim 1 of the reissue patent in light of Meyerhoefer, Black and Decker's motion for a preliminary injunction must be denied.

In addition to the Meyerhoefer reference, Hoover claims that claim 1 of the reissue patent is anticipated by various other prior art references. As to these references, the Court notes simply that while there is certainly a question as to the validity of claim 1 based on the additional prior art references, it appears to the Court that, based on the evidence presented at the preliminary injunction hearing, Black and Decker has sustained its burden of establishing a reasonable likelihood that Hoover's claims of invalidity based on anticipation of claim 1 of the reissue patent by the ShopVac, the Chemko Model SG001 Carpet Soil Extractor, the Chemko Model SG005 Carpet Soil Extractor and the Chemko Model 75 Carpet Soil Extractor, will fail.

### C. *Invalidity Under 35 U.S.C. § 112*

■ In opposition to Black and Decker's motion for preliminary relief, Hoover urges this Court to find Claim 1 invalid under 35 U.S.C. § 112. This section requires a "determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed.Cir.1986). The only testimony by a person skilled in the art regarding claim 1 of the reissue patent was proffered by Hoover through Charles DeGraff. He found, not surprisingly, that claim 1 of the reissue patent contained ambiguities and inconsistencies throughout. Although Professor Chisum joined in DeGraff's conclusion that claim 1 should have been rejected under 35 U.S.C. § 112, the Court notes that despite Professor Chisum's remarkable credentials in the patent world, he is not one ordinarily skilled in the art of hand-held vacuum cleaners or for that matter vacuum cleaners generally.

In contrast to the testimony of Hoover's witnesses on this issue, Black and Decker convincingly points to the fact that the reissue examiner, a primary examiner of considerable experience, considered the very claim language to which Hoover objects during the prosecution of both the original and reissue applications for the patent in issue. The examiner obviously concluded that the pending claims of the Levine patent satisfied the requirements of 35 U.S.C. § 112 or he would not have issued the claims. Further, Hoover's arguments regarding the ambiguity and inconsistency of claim 1 are belied by Hoover's detailed analyses of the same claim in applying the prior art to it. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727

F.2d 1540, 1547 (Fed.Cir.1984). Thus, according the proper deference to the examiner, and absent any evidence by Hoover other than the assertions of Hoover employee Charles DeGraf that claim 1 contains ambiguities and inconsistencies, the Court finds that Black and Decker has established a reasonable likelihood that Hoover's claims of invalidity based on 35 U.S.C. § 112 will fail.

### D. *Unenforceability Due to Inequitable Conduct*

■ The defense of inequitable conduct requires proof of an act of misrepresentation, which was material, involving information that was known or should have been known to the patentee and which was committed with the requisite intent. *Akzo N.V. v. U.S. Int'l Trade Comm'n,* 808 F.2d 1471 (Fed.Cir.1986), *cert. denied,* 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987).

■ At trial, Hoover will bear the burden of proving by clear and convincing evidence that there was inequitable conduct in the prosecution of the reissue application. *Id.* at 1481. However, on a motion for a preliminary injunction, the burden is on Black and Decker to demonstrate a reasonable likelihood that this affirmative defense asserted by Hoover will fail. *See H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 387 (Fed.Cir.1987). Based on the evidence presented at the hearing, the court concludes that Black and Decker has not met its burden at this stage of the litigation.

■ The misrepresentation necessary for a finding of inequitable conduct is often in the form of a failure to disclose information which was known to be material to the patent prosecution. *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144 (Fed.Cir.1983). The Court finds that the Meyerhoefer patent was material and that Black and Decker was aware of its materiality as early as October, 1987. Thus, the only remaining question is whether or not this information was intentionally withheld. The intent necessary to support a finding of inequitable conduct can usually only be found as a matter of inference from circumstantial evidence. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556, 1562 (Fed.Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990). "Intent is found upon consideration of *all* the facts and circumstances involving the conduct in question." *Klein v. Peterson,* 866 F.2d 412, 415 (Fed.Cir.), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989). There is in the record sufficient evidence from which to conclude that the information regarding the Meyerhoefer patent was intentionally withheld from the patent office and then disclosed at such a time and in such a way as to be misleading. Significantly, an applicant's duty of disclosure of material and information is not satisfied by presenting a patent examiner with "a mountain of largely irrelevant [material] from which he is *presumed* to have been able, with his expertise and with adequate time, to have found the critical [material]. It ignores the real world conditions under which examiners work." *Rohm & Haas Co. v. Crystal Chemical Co.,* 722 F.2d 1556, 1573 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). (Emphasis in original).

The evidence adduced at the hearing demonstrated that the reissue application was filed to bring prior art to the attention of the patent examiner. However, the prior art given to the examiner was submitted after claims 1–7 had already been allowed and thus too late for the examiner's consideration, despite the fact that the evidence suggests that Black and Decker was aware of the Meyerhoefer patent and its significance as early as October, 1987. Black and Decker points out that in an interview with the patent examiner on March 28, 1988, Black and Decker attorneys disclosed Meyerhoefer and 41 other prior art patents. In addition Black and Decker argues that although submitted with 41 other prior art references after the allowance of the claims, the examiner's attention was specifically drawn to Meyerhoefer as it and two other references were noted in the Information Disclosure Statement as being of particular relevance. However, the Court notes that the description of Meyerhoefer

provided to the examiner by way of the Information Disclosure Statement is contrary to information contained in several Black & Decker documents indicating that Black and Decker attorneys believed that the reissue patent was invalid in view of Meyerhoefer. Black and Decker correctly notes that mere characterization of a reference distinguishing it from claims at issue does not constitute a material misrepresentation. *Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1482 (Fed. Cir.1986). However, Black and Decker documents suggest that there was at least some question as to the validity of the reissue patent in light of Meyerhoefer. Because of the *ex parte* nature of patent prosecution proceedings, the duty of candor would have required Black and Decker to disclose all material information including information which supported a finding of validity of the reissue patent in light of Meyerhoefer as well as information which did not support such a finding. 37 C.F.R. 1.56(a). Black and Decker failed to disclose such information. Thus, without deciding that inequitable conduct actually occurred, the Court finds that Black and Decker has failed to demonstrate a reasonable likelihood that Hoover's claim of inequitable conduct will fail.

█ Since the Court has found that it is unlikely that Hoover will succeed on its § 112 claims, it follows that the Court does not find that Black and Decker concealed from the patent examiner § 112 deficiencies. In addition, contrary to Hoover's contentions, a patent owner's alleged inequitable conduct in other patent application proceedings is not relevant. *FMC Corp. v. Hennesy Indus., Inc.*, 836 F.2d 521, 524 (Fed.Cir.1987). Thus, the Court will disregard Hoover's contentions in this regard.

## II. Antitrust Claims

Hoover has raised various antitrust affirmative defenses and counterclaims in response to Black and Decker's patent claims. Specifically, Hoover has alleged that Black and Decker commenced the present action with knowledge that the reissue patent was invalid and unenforcea-

ble. Hoover further asserts that Black and Decker has engaged in a general course of predatory conduct and that Black and Decker is guilty of actual monopolization or alternatively, attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Hoover additionally alleges that Black and Decker and CIC entered into a conspiracy in violation of both Section 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

While once again Hoover will bear the ultimate burden of proving its antitrust claims at trial, at the preliminary injunction stage the burden is on Black and Decker to prove that it will likely succeed on the merits as to that defense. *See H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387 (Fed.Cir.1987).

### A. Monopolization or Attempted Monopolization Under Section 2 of the Sherman Act

█ The offense of monopolization under § 2 of the Sherman Act has two elements: 1) the possession of monopoly power in a relevant market and 2) the wilful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). In addition to a claim of monopolization, liability under Section 2 may also be predicated upon proof of an attempt to monopolize. In order to demonstrate attempted monopolization Hoover must prove 1) anticompetitive or exclusionary conduct; 2) specific intent to monopolize; and 3) a dangerous probability that the attempt will succeed as indicated by the barriers to entry in the relevant market. *See Volvo N. Am. Corp. v. Men's Int'l Professional Tennis Council*, 857 F.2d 55, 73–74 (2d Cir. 1988).

█ Despite the differing elements between a claim based upon monopolization and one based on attempted monopolization, there are significant overlaps in proof. To prove either violation, Hoover must demonstrate that Black and Decker en-

gaged in anti-competitive conduct. *See NorthEastern Tel Co. v. American Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982). Moreover, allegations of both monopoly and attempt to monopolize require some measure of the relevant market. *International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 791 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

### 1. Relevant Market

■ As a threshold matter, the court must determine the market in which the defendant competes and whether the defendant possesses monopoly power in that market. *Hayden Pub. Co. v. Cox Broadcasting Corp.*, 730 F.2d 64, 68 (2d Cir. 1984). A determination of the relevant market focuses upon whether the products at issue can be substituted for each other, *i.e.*, are functionally interchangeable, and whether they exhibit a cross-elasticity of demand. *Id.* at 70–71.

Black and Decker argues that the relevant market is the corded and cordless hand-held vacuum market. Hoover, on the other hand argues that the relevant market is limited to cordless hand-held vacuums.

During the hearing Hoover presented the testimony of Dr. Janusz Ordover that the relevant market in which to assess the plaintiffs' conduct is the market for cordless hand held vacuum cleaners. In addition to the credible testimony by Dr. Ordover, the evidence also demonstrated that cordless hand-held vacuum cleaners have distinctly different functions from corded products since they are very portable and can be used only for a short time span. By far the most compelling evidence in this regard comes from Black and Decker. The results of Black and Decker's market research demonstrates that the most popular corded hand held vacuum, the Dirt Devil, was purchased by consumers to replace either a full size upright or canister vacuum. Moreover, thirty percent of the corded Dirt Devil owners surveyed purchased the product in addition to a cordless hand held vacuum cleaner. In addition, Black

and Decker's own documents indicate that when Hoover introduced its corded product, the Help Mate, into the market, Black and Decker did not consider it to be a threat to the cordless product. As the Court in *United States v. Grinnell, supra*, noted, despite having the same end use, products which are sufficiently differentiated in utility and efficiency may be excluded from the relevant product market. 384 U.S. at 573, 86 S.Ct. at 1705. Similarly, in *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007, 100 L.Ed. 1264 (1956), the Court recognized that "illegal monopolies under § 2 may well exist over limited products in narrow fields." Thus, although Black and Decker puts forth some persuasive arguments in favor of a broader relevant market definition, considering all the evidence presented in this case the Court concludes that the relevant market is limited to cordless hand held vacuum cleaners.

### 2. Market Power

■ The next question is whether Black and Decker has monopoly power within the relevant market. *International Distribution Centers, Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 791 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Market power or monopoly power is defined as "the power to control prices or exclude competition." *Broadway Delivery Corp. v. United Parcel Service of America, Inc.*, 651 F.2d 122, 127 (2d Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). "[W]hile market share is not the sole factor in the determination of market power, it is a highly significant one." *Delaware & Hudson R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 179 (2d Cir.), *appeal pending*, 59 U.S.L.W. 3324 (1990).

■ In the cordless hand vacuum market, Black and Decker has held a market share of over 78% since the product's introduction in the late 1970's. For the fourth quarter of 1989, its share was 87%. Black and Decker argues that despite its high market share the fact that competitors exist and new competitors have en-

tered the market shows that there are no significant barriers to entry to the market. Black and Decker correctly notes that absent barriers to entry into the relevant market, there can be no finding of monopoly power. In support of this Black and Decker argues that Hoover's entry into the market and its subsequent gain of a 16% market share is the best evidence of the lack of barriers to entry in the hand-held cordless market. Hoover responds that Black and Decker's acquisition of an exclusive license for the rights to the reissue patent was done not for the purpose of protecting itself from an infringement lawsuit, but rather to be able to sue Hoover and exclude its products from the market, thus creating a significant entry barrier. As Black and Decker notes, it is unlawful for a monopolist to maintain its monopoly power through competitively undesirable means. And as the Second Circuit noted in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 291 n. 50 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), "certain actions may violate § 2 when taken by a monopolist even though they would be perfectly legitimate in the hands of a firm lacking market control." However, "if the action that gains a firm a competitive advantage is effective because of a company's efficiency, prestige, or innovativeness," the action is not an unlawful use of monopoly power. *Id.*

### 3. Anticompetitive Conduct

Here, the advantage to be gained by Black and Decker through its acquisition of an exclusive license was not the result of its efficiency, prestige or innovativeness. The Court further finds that although it is not generally unlawful to acquire an exclusive patent license, Hoover is likely to succeed in proving that in this case such an acquisition was an anti-competitive event designed to drive Hoover, the only substantial competitor, from the relevant market. Significantly, had Black and Decker simply

wanted to protect itself from the threat of a suit for infringement, it could have obtained a non-exclusive license. In addition, the Court finds it somewhat incredible, if Black and Decker's only purpose in acquiring the license was to stave off an infringement suit, that Black and Decker would have paid for an exclusive license for a patent of questionable validity, then vigorously demand that the license permit enforcement rights to Black and Decker and agree to pay one-half of all litigation recoveries to the licensor.

### 4. Antitrust Injury

Finally Black and Decker argues that even if the acquisition of an exclusive license was an anticompetitive event, the license covers only wet-dry products and thus does not preclude Hoover or any other competitor from competing in the cordless hand held vacuum market. Indeed, as Black and Decker points out, sales of the wet/dry units comprise only 12% of the relevant cordless hand held market. Accordingly, Black and Decker argues that its exclusive license does not preclude Hoover or others from competing with a dry only product that does not infringe the DUST-BUSTER patent (presumably obtained without any anti-competitive conduct), designing a non-infringing wet/dry product or taking a license from Black and Decker. The Court agrees. Of course, if this Court is correct, and Hoover succeeds in proving the invalidity of the patent, Hoover will also be able to compete with its wet dry product. However, even if Hoover fails to prove the invalidity of the reissue patent, the Court cannot conclude that Hoover and other competitors will be excluded from the relevant market, as that has been defined, as a result of Black and Decker's anticompetitive conduct. Nor can the Court conclude, based on the evidence presented,[2] that there is a dangerous probability that Hoover and other competitors will be excluded from the relevant market as a result of Black and Decker's conduct. Thus,

---

**2.** This conclusion might have been different had Hoover demonstrated that the wet/dry segment of the relevant market was growing and would soon constitute a large segment of the market.

However, absent such evidence, the Court must assume that the wet/dry segment of the market will remain a small percentage of the entire cordless hand-held vacuum market.

based on the above, the Court finds that Black and Decker has met its burden of demonstrating a reasonable likelihood that Hoover's Section 2 Sherman Act claims will fail.

### B. *Conspiracy to Monopolize in Violation of Section 2 of the Sherman Act*

■ Hoover next claims that the reissue patent is unenforceable because Black and Decker and CIC entered into the patent licensing agreement as part of a conspiracy to monopolize and to restrain trade in violation of Section 2 of the Sherman Act. This section prohibits any person from monopolizing, attempting to monopolize, or combining or conspiring with any other person or persons to monopolize any part of interstate trade. 15 U.S.C. § 2. The elements of a conspiracy to monopolize under Section 2 are "proof of (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." *Volvo N. Amer. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988).

■ Hoover, citing *United States v. Singer Manufacturing Co.*, 374 U.S. 174, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963), asserts that a conspiracy to monopolize may be demonstrated by showing that a patent owner granted a dominant firm an exclusive license for the purpose of permitting the dominant firm to thereby exclude competition. In this case, however, the evidence presented to the Court suggests that rather than intending to monopolize the market and rid itself of competitors as was the case in *Singer*, CIC was interested in one thing: obtaining as much money as possible in return for the license. Indeed, as Hoover points out, CIC initially did not want to give Black and Decker an exclusive license and had solicited other companies for a potential license agreement. Absent proof that CIC shared Black and Decker's intent to create a monopoly, Hoover's conspiracy claim must fail. Thus, based on the evidence presented at this stage of the litigation, the Court finds that Black and Decker has met its burden of demonstrat-ing a reasonable likelihood that Hoover's claim of patent misuse based on a conspiracy to monopolize and restrain trade will fail.

### C. *Clayton Act Claims*

■ In addition to its Sherman Act claims, Hoover has alleged that Black and Decker has violated Section 7 of the Clayton Act. However, before a party is entitled to relief under Section 7 of the Clayton Act the party must demonstrate antitrust injury. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986). The Court has already found that Hoover is not likely to succeed on its Section 2 Sherman Act claim because it is not likely that Hoover can establish that it will be excluded from the relevant market. For this same reason, the Court finds that Hoover is not likely to succeed on its Clayton Act claim and thus, a denial of Black and Decker's motion for preliminary relief is not warranted on that ground.

### III. Irreparable Harm

■ Black and Decker claims that absent an injunction plaintiffs will suffer irreparable harm by virtue of lost sales and shelf space and asserts that it is entitled to a presumption of irreparable harm. However, as Black and Decker concedes, such a presumption is only warranted where there has been a showing of likelihood of success on the issues of infringement *and* validity. *See Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1456 (Fed.Cir.1988). As noted previously, Black and Decker's likelihood of success on the infringement issue has already been decided by the Federal Circuit. The question of likelihood of success on the question of validity, however, was left for this Court to determine. Inasmuch as this Court has concluded that Black and Decker has not demonstrated a likelihood of success in defending against Hoover's claims of invalidity, the Court does not find the presumption of irreparable injury to apply. Further, since the Court concludes that Hoover is likely to succeed on its claim of unenforceability due

**1142**

to inequitable conduct before the Patent and Trademark Office, the presumption of irreparable harm does not apply. Absent the presumption, the Court must look to the evidence of irreparable harm presented by Black and Decker. The Court finds no evidence of injury that could not, upon a finding in favor of Black and Decker on infringement and validity, be calculated and satisfied by Hoover.

## IV. Balance of Hardships

In light of this Court's conclusion that Hoover is likely to prevail on its claims of invalidity, the Court finds that the balance of hardships attendant upon the issuance of an injunction tips decidedly in favor of Hoover. Were the injunction to issue, Hoover would be eliminated as a competitor. Conversely, if Black and Decker were to ultimately to succeed at trial, they could be compensated financially for any lost profits resulting from sales of the Hoover product.

## V. Public Interest

Finally, the Court finds that it is not in the public interest to grant an injunction to the holder of what is likely to be proven to be an invalid patent.

## CONCLUSION

For the reasons set forth above, Black and Decker's motion for a preliminary injunction is DENIED. The Court has issued this ruling in comprehensive fashion, covering all issues raised by the parties, in the hope that such broad coverage may resolve issues that otherwise would be fully and expensively contested at the forthcoming trial on the merits. This protracted litigation has already proved excessively burdensome to the litigants and the Court.