CHARLES GREINER & CO., INC. d/b/a Philadelphia Cervical Collar Co.,

v.

MARI–MED MFG., INC., William R. Burns, Paul W. Burns and Gary R. Burns.

Civ. A. No. 89–0392.

United States District Court, D. Rhode Island.

Jan. 11, 1991.

Harvey Bumgardner, Jr., New York City, Philip L. Rodman, Rodman & Rodman, White Plains, N.Y., for plaintiff.

Herbert B. Barlow, Jr., Cranston, R.I., for defendant.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiff, Charles Greiner & Co. (Greiner), manufactures and sells a neck brace known as the Philadelphia Cervical Collar.

The inventors, Anthony Calabrese and Frank Gramiglia, received a patent number 3,756,226 ('226 patent) for the Philadelphia Cervical Collar. Calabrese and Gramiglia assigned their patent to plaintiff on September 4, 1973. The patent expired September 4, 1990. Plaintiff also owns a registered trademark number 1,236,145, for the words "Philadelphia Cervical Collar."

Defendant William R. Burns designed the so-called Burns Collar to compete with the Philadelphia Cervical Collar. Later, Burns worked for defendant Mari–Med Mfg., Inc. (Mari–Med), a Rhode Island corporation which sold the Burns Collar for substantially less money than the Philadelphia Cervical Collar. Defendants Paul and Gary Burns were officers, directors and owners of Mari–Med.

When plaintiff discovered the similarity between its collar and the less-expensive Burns Collar, and that certain merchants described Burns' Collar as a "Philly Type Collar" or a "Philly Style Collar" or a "Generic Philadelphia Collar", this action began. Plaintiff sues for patent infringement, trademark infringement and unfair competition. Claim one is that Burns' collar infringes the '226 patent assigned to plaintiff. Claim two is that defendants, by imitating plaintiff's registered trademark, wrongfully reaped what plaintiff had sown in violation of 15 U.S.C. § 1114. Claim three is that defendants have unfairly competed with plaintiff in violation of 15 U.S.C. § 1125 by copying the Philadelphia Cervical Collar's physical contours, misappropriating the Philadelphia Cervical Collar's neck height sizes, and inducing others to palm off the Burns Collar as a Philadelphia Collar.[1]

## I. PATENT INFRINGEMENT

The Philadelphia Cervical Collar was designed to bridge the gap between rigid cervical collars and soft cervical collars.

The inventors deemed the Philadelphia Cervical Collar a substantial improvement over existing products because soft cervical collars inadequately fortify the cervical spine, and rigid collars are too uncomfortable to wear for extended periods of time. Thus, Calabrese and Gramiglia constructed the Philadelphia Cervical Collar in two halves from soft foam, with rigid plastic braces attached at the extreme front and back. The Philadelphia Cervical Collar was also designed to be a mass-production item as distinguished from custom made cervical collars which are molded directly upon patients. The plaintiff enjoyed substantial success in marketing the Philadelphia Cervical Collar.

The Burns collar is constructed from soft foam and has two plastic support members imbedded between the foam layers. The support members cover a substantial portion of the collar. Plaintiff contends that the Burns collar literally infringes claims 1, 4, 5, 6, 7, 8, 9, and 10 of the '226 patent. Alternatively, plaintiff claims infringement under the doctrine of equivalents.

### A. LITERAL INFRINGEMENT

When determining whether literal infringement exists, the Court must first interpret the '226 claims, which is a question of law, and then determine if defendant's collar "reads on" plaintiff's claims. See e.g., Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452 (Fed.Cir. 1985). In this case, literal infringement depends on the interpretation of claim one which is incorporated into all subsequent claims. Claim 1 of the '226 patent describes:

A cervical collar comprising first and second discrete body halves, one of said body halves being a front half and the other being a rear half, each half being U-shaped and preformed from a soft flexible, lightweight closed cell foam

---

1. Immediately before trial, plaintiff moved to amend its complaint to add an additional defendant, Emergency Medical Products, Inc. (EMPI), and to add a claim that defendants conspired with Richards Medical Company to commit patent infringement, trademark infringement and compete unfairly with plaintiff.

Plaintiff's motion to amend the complaint is denied. With respect to EMPI, the motion comes too late. The motion to add a conspiracy allegation is denied because there is no credible evidence that defendants and Richards Medical Company agreed to compete unfairly with plaintiff or infringe plaintiff's trademark.

polymeric plastic material, each half being provided with air holes extending therethrough, adjustable strap means having a portion coupled to each of said halves for releasably interconnecting the free ends of said halves in overlapping relation, a first rigid support member fixedly secured to and located only at the bight of the front half, a second differently shaped rigid support member fixedly secured to and located only at the bight of the rear half.

The question for interpretation is how far the "bight" extends around the collar. Plaintiff argues that the bight forms a parabola and constitutes most of the U-shaped half. This argument is predicated on specifications in column 2, line 1 of the patent which states that the "front half 12 is comprised of a U-shaped body 13 having end portions 16 and 18 extending from a bight portion."

Defendants argue that the bight is found where the rigid support members are attached. In support, defendants cite lines 13–17 of the patent: "Thus, the body 13 tapers away from the bight portion so that the vertical dimensions of the end portions 16 and 18 are only about one-half the vertical height of the bight portion when viewed in elevation or section as shown in FIG. 3." Figures 1–4 of the patent drawings are appended hereto as an appendix.

Defendants point out that the extreme front and rear of each half, as measured in FIG. 3 of the patent, is 3 inches in height, and that the center of the overlapping ends is 1 and ½ inches in height. Lines 18–19 state that "[t]he upper end of the bight portion of the body 13 is shaped to provide a chin cavity 26." Lines 28–30 state that "[m]ember 30 ... extends for substantially the entire length of the bight portion on body 13."

From these quoted specifications, it is clear that the length of the bight is correlated with the length of the member (30), on the vertical plane. The dimensions of the patent's diagrams, as well as the patent specifications, lead to the conclusion that the width of the bight portion is approximately the width of the rigid supporting members. This conclusion is reinforced by the prosecution history wherein the inventors state that "[h]eretofore, it was not thought possible that a cervical collar could be made from soft, flexible foam material which is non-supporting and yet operate as a cervical collar solely because of the rigid members at the front and back." It would therefore contradict the intent of the inventors to hold that the supporting members could be located anywhere other than the front and rear of the collar. This Court is not the first to determine that the bight portion of the '226 patent is limited to the collar's front and back. *See Technol Inc. v. Charles Greiner & Co., Inc.*, No. 3–89–2364–T (N.D.Tx. Mar. 7, 1990) (order denying preliminary injunction).

The Court must now determine whether the Burns collar literally infringes the '226 patent. The Burns collar is a two-piece collar, constructed of a soft polymeric material. The imbedded braces, however, extend substantially around the Burns collar. Accordingly, the supporting members of Burns' collar are not located only at the bight as interpreted above. Therefore, the Burns collar does not infringe claim one of the '226 patent. Because the '226 patent effectively incorporates claim one into all other claims, the Burns collar does not literally infringe any of the '226 claims.

## B. INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

█ Alternatively, plaintiff maintains that the doctrine of equivalents merits a finding of infringement. This doctrine holds that absent literal infringement, a device may still infringe " 'if it performs substantially the same function in substantially the same way to obtain the same result.' " *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)). Plaintiff argues that the Burns collar meets this criteria, and its experts so testified.

On the other hand, defendants' expert testified that the Burns collar, by using

stiffening material throughout a large portion of each half, allows minimal lateral head motion; whereas the Philadelphia Cervical Collar is constructed of only soft material except for the front and rear supports, thereby permitting substantial lateral head motion. Defendants introduced a learned treatise which concludes that the Philadelphia Cervical Collar does not control lateral motion well. Defendant's Exhibit D1, at pages 334, 337–38. Defendants also introduced an expert x-ray study of patients' capability for lateral motion with plaintiff's collar as compared with defendants' collar. This experiment suggests that defendants' collar prevents lateral motion better than plaintiff's collar.

In rebuttal, plaintiff's expert testified that lateral support is an insubstantial difference because it is not medically indicated for the collar's intended use.

This Court is not convinced by a preponderance of the evidence that the Burns collar infringes based on the doctrine of equivalents. First, the Burns collar achieves the desired result by imbedding a thin sheet of plastic between two layers of polyethylene throughout the collar; whereas the Philadelphia Cervical Collar achieves the desired result by two supports which are heavier and thicker and located outside the collar only at the front and back. Second, and more importantly, the Burns collar achieves a substantial result which the Philadelphia Cervical Collar does not—minimization of lateral head motion. Burns also received a patent for his collar. The Burns Collar does not infringe based on the doctrine of equivalents.

▪ Further, plaintiff is estopped from invoking the doctrine of equivalents because of file wrapper estoppel. File wrapper estoppel applies where an inventor amends a claim before the Patent and Trademark Office to differentiate prior inventions, and then attempts to recapture the original claim by invoking the doctrine of equivalents in an infringement action. *See e.g., Townsend Engineering Co. v. Hi-Tec Co. Ltd.,* 829 F.2d 1086 (Fed.Cir.1987); *Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.,* 793 F.2d 1279

(Fed.Cir.1986). In those circumstances, the patent holder is prohibited from invoking the doctrine of equivalents to recapture claims surrendered in order to receive the patent.

The Patent and Trademark Office rejected the inventors' first application which did not limit the support members' location to the bight portion. The initial rejection was based on the examiner's opinion that the claims were:

> obvious and mere matter of choice to provide rigid members to the front and rear of the collar if additional reinforcement was needed or desired, note column 7, lines 30–35; obvious to form a collar of "A" in two halves as taught by "B". Further, obvious to secure rigid members by rivets and washers in the absence of any showing of criticality producing no new or unexpected results.

The examiner's references to "A" and "B" allude to the Webster Patent, number 3662057 ("A"), and the Monfardini Patent, number 3042027 ("B"). The reference to "note column 7, lines 30–35" speaks of the Webster Patent. The Webster patent, at column 7, lines 32–35, describes a one-piece foam cervical collar which can be made from a mold and reinforced with solid polyethylene at the front of the collar. The Monfardini patent describes a two-piece rigid adjustable collar. The Patent and Trademark office rejected the initial claims of the Philadelphia Cervical Collar because it was an obvious modification from Webster "and mere matter of choice to provide rigid members to the front and rear of the collar if additional reinforcement was needed or desired."

Subsequently, Calabrese and Gramiglia amended their claims by adding the words "and located only at [the bight]" when describing the location of the rigid support members. The claims were thus limited from supporting members being located at the bight, to supporting members being located only at the bight. In remarks accompanying the amendments the applicant argued that:

> Neither of the references [Monfardini or Webster] suggests the soft, flexible ma-

terial of the present invention which is not self-supporting. Thus, in the cervical collar of the present invention, only the rigid members at the front and rear do any supporting. This constitutes a radical departure from either of the prior references relied on by the Examiner.... Heretofore, it was not thought possible that a cervical collar could be made from soft, flexible foam material which is non-supporting and yet operate as a cervical collar solely because of the rigid members at the front and back.

As a result, the '226 patent issued. The inventors distinguished Monfardini and Webster and received the '226 patent by limiting the location of the rigid support members to the bight portion. As discussed *supra*, the bight is the extreme front and back of the collar. The Burns Collar, however, has support throughout the collar—not only at the bight. If the plaintiff were to prevail under the doctrine of equivalents, it would recapture the claim it surrendered in order to receive the '226 patent. Plaintiff is therefore estopped from claiming infringement under the doctrine of equivalents.

## II. TRADEMARK INFRINGEMENT

Plaintiff's second claim is that defendants imitated and induced others to imitate plaintiff's registered trademark, "Philadelphia Cervical Collar" in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), which imposes civil liability upon any person, who without consent of the registered owner:

use[s] in commerce any ... colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any goods ... which such use is likely to cause confusion, or to cause mistake, or to deceive....

Plaintiff introduced two letters (P Ex. 52, 53) sent by William R. Burns to Richards Medical Company (Richards).[2] Richards had contacted Burns and asked him to design a collar to compete with the Philadelphia Cervical Collar. Burns did so, using a Philadelphia Cervical Collar supplied by

Richards as a model. Eventually, Richards and William R. Burns struck a deal where, *inter alia,* Burns would sell his collar to Richards. The two letters introduced by plaintiff reflect negotiations between Richards and Burns regarding the terms of the deal. In these letters, William R. Burns refers to his collar as a "Philly [sic] Collar." Burns also admitted in his deposition that he used the words "Philly Collar" to describe his collar while negotiating with Richards. Plaintiff claims that Burns imitated plaintiff's trademark in violation of the Lanham Act by using the words "Philly Collar" to describe his collar in letters and negotiations with Richards.

In order to prove that Burns violated 15 U.S.C. § 1114(1)(a), plaintiff must prove that (1) "Philly Collar" is a colorable imitation of plaintiff's registered trademark; (2) Burns used the words "Philly Collar" in interstate commerce and in connection with the sale of his collar; and (3) that Burns' use of the words "Philly Collar" created the likelihood of confusion regarding the source of his goods or the plaintiff's sponsorship thereof. Assuming *arguendo* that plaintiff has shown the first two elements, it cannot succeed under 15 U.S.C. § 1114 because a likelihood of confusion has not been shown. The Burns letters and statements were communicated during negotiations for the sale of Burns' collar. William R. Burns and Richards harbored no misapprehensions about the collar's source or sponsorship. Plaintiff has not demonstrated that these letters caused a likelihood of confusion among members of the general public. No additional evidence was offered that any defendant imitated plaintiff's trademark. Therefore, plaintiff's claim that defendants directly violated 15 U.S.C. § 1114 fails.

Plaintiff also suggests that defendants induced others to infringe plaintiff's registered trademark. Plaintiff cites Burns' use of the words "Philly Collar" in negotiations with Richards, and other distributor's use of the words "Philly Type Collar" or "Philly Style Collar" or "Generic Philadel-

**2.** Richards is not a defendant in this action. Plaintiff has, however, filed a separate action against Richards in the United States District Court for the District of Delaware.

phia Collar" in connection with their sale of Burns' Collar. Plaintiff argues that this evidence shows that Burns induced vendees to infringe plaintiff's trademark.

■ Liability may be imposed on a person who induces another to infringe a trademark. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853–54, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). The test is whether defendants intentionally induced vendees to infringe plaintiff's trademark, or continued to supply the Burns Collar with knowledge that vendees were infringing. *Id.* From the evidence adduced, however, the Court is unpersuaded that Burns intended that his vendees infringe plaintiff's trademark, or use the words "Philly Type Collar" and the like when marketing Burns' Collar. No credible evidence has been offered that Burns continued to supply his collar to vendees with knowledge that they were infringing plaintiff's registered trademark. Plaintiff's claim that defendants induced others to imitate plaintiff's trademark also falls short.

### III. UNFAIR COMPETITION

■ Plaintiff's third claim is that defendants engaged in unfair competition in violation of 15 U.S.C. § 1125 by slavishly copying the contours of the Philadelphia Cervical Collar, misappropriating plaintiff's neck height sizes, and inducing others to palm off the Burns Collar as a Philadelphia Cervical Collar. The relevant portion of 15 U.S.C. § 1125(a) provides that:

> Any person who shall … use in connection with any goods or services, or any container or containers for goods, a false description of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce … shall be liable in a civil action.

The evidence reveals that William R. Burns deliberately copied the Philadelphia Cervical Collar's shape. Plaintiff claims that this conduct infringed the Philadelphia Cervical Collar's tradedress and resulted in consumer confusion surrounding the source of the Burns Collar. However, the shape of the Philadelphia Cervical Collar is that of a human neck. This is a purely functional design of which plaintiff certainly cannot claim exclusive use. *The Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 221 (1st Cir.1989); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir.1980); *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 378 (1st Cir.1980). "Because of the consuming public's 'interest in free competition and in economic and technological progress,' functional features which are not the subject of a valid patent or copyright may be imitated with impunity." *Fisher Stoves, supra,* 626 F.2d at 195 (quoting *Intricate Metal Products, Inc. v. Schneider*, 324 F.2d 555, 562 (9th Cir.1963)). Plaintiff holds no patent on either the shape of the Philadelphia Cervical Collar or the human neck. Accordingly, plaintiff cannot recover for defendant's initial copying of the Philadelphia Cervical Collar's shape.

■ Moreover, plaintiff has not shown a likelihood of consumer confusion between the two collars due to a similarity in shape. In fact, the Burns Collar is easily distinguished from the Philadelphia Cervical Collar by color[3], and because there are no external visible supports attached to the Burns collar. These collars are sold primarily to doctors, hospitals and emergency medical technicians—relatively sophisticated buyers who are not likely to be confused between the two collars. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 981, 103 L.Ed.2d 118 (1989) (defendant may slavishly copy plaintiff's product so long as no false designation of origin is committed) (quoting *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F. 299, 301 (2d Cir.1917) (Hand, J.)); *Astra Pharmaceutical Prod., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1206 (1st Cir.1983) (so-

---

**3.** The Philadelphia Cervical Collar is beige whereas the Burns Collar is white. Plaintiff never sold the Philadelphia Cervical Collar in white.

phistication of buyers militates against likelihood of confusion).

■ Plaintiff also asserts that defendants competed unfairly by misappropriating plaintiff's neck height sizes. The Philadelphia Cervical Collar is designated with neck height sizes of 2¼", 3¼", 4¼" and 5¼". Burns used the same designations of neck sizes for his line of collars. This helped distributors quickly cut into plaintiff's market.

Plaintiff offered testimony that its neck height sizes are not actual neck height measurements, but are arbitrary and designed to distinguish the Philadelphia Cervical Collar. From that evidence, plaintiff argues that the Philadelphia Cervical Collar's neck height sizes are protected as common-law trademarks under the Lanham Act. There is serious doubt whether plaintiff's neck height sizes could constitute protectable tradedress because of the functionality of the size designation. In any event, plaintiff has not demonstrated that its neck sizes have acquired a secondary meaning or that the use of identical sizes create a likelihood of confusion surrounding the collar's source. Even viewing the neck size appropriation in conjunction with Burns' copying of the Philadelphia Cervical Collar's contours, plaintiff has not shown that a likelihood of confusion has resulted. Accordingly, plaintiff's allegations of tradedress infringement miss the mark.

Likewise, plaintiff has failed to show that defendants palmed off the Burns Collar as a Philadelphia Cervical Collar. There is no credible evidence that defendants affixed a Philadelphia Cervical Collar label on the Burns Collar, or represented that the Burns Collar was a Philadelphia Cervical Collar. Plaintiff has also neglected to show that defendants intentionally induced others to palm off, or continued to supply the Burns Collar with knowledge that vendees were palming off.

Plaintiff's motion to amend the complaint is denied, and judgment shall enter for defendants on all counts for costs.

SO ORDERED.